HENRI VINCENDEAU

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed February 21, 1906.*

1. TRADE-MARKS—*act of 1895 applies to labels or trade-marks on bottled goods.* Section 2 of the Trade-mark act, as amended in 1895, (Laws of 1895, p. 320,) covers goods, wares and merchandise of every description, no matter how packed or in what contained, to which or upon which any counterfeit label or trade-mark is in any manner attached, including bottled goods as well as others.

2. SAME—*prosecution for violating Trade-mark act cannot be maintained unless label or trade-mark is recorded.* A prosecution for violation of the Trade-mark act of 1895 cannot be maintained except for acts done after copies of the label, trade-mark or other device, with the accompanying affidavit, have been filed with the Secretary of State for record, as required by section 3 of such act.

3. INDICTMENT—*when indictment for violating Trade-mark act is not defective.* An indictment for violating the Trade-mark act of 1895, which alleges that the labels in question had before then "been duly filed for record in the office of the Secretary of State of the State of Illinois, as by law provided," is not defective in failing to specifically aver that the affidavit required by section 3 of such act to accompany the labels was filed.

4. CRIMINAL LAW—*whether person to whom counterfeit goods were sold purchased for himself or as an agent is not material.* Whether the person to whom the accused sold goods in bottles bearing counterfeit labels, purchased the goods for himself or as agent is not material, and there is no variance between an allegation that he purchased for himself and proof that he purchased as an agent.

5. SAME—*when exclusion of evidence is error.* One indicted for selling cases of counterfeit champagne which he claims he took from another person in satisfaction of a debt, believing the labels

and liquor to be genuine, is entitled to show by the expressman who delivered the cases that said expressman had at an earlier date brought such cases to the accused from the place of business of the person from whom the accused claims to have received them.

6. NAMES—*when names are not idem sonans.*  The name Matt Von Guaita and the name Max Von Guaita are not *idem sonans.*

7. SAME—*when instruction as to doctrine of idem sonans is misleading.*  Where there is a conflict in the evidence as to whether the name "Matt" alleged in the indictment is "Matt" or "Max," an instruction for the People stating that the doctrine of *idem sonans* applies in this State, and that the "law does not favor *extreme technicality* in regard to proof of name where the sound of the names is very similar," is erroneous and misleading.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

This is an indictment found by the grand jury of Cook county at the November term, 1903, of the criminal court of Cook county against the plaintiff in error, based upon sections 1 and 2 of chapter 140, (Hurd's Rev. Stat. of 1903,) being "An act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising," approved May 8, 1891, in force July 1, 1891. (Laws of 1891, p. 202.) A plea of not guilty was interposed, and upon the trial the jury returned a verdict finding plaintiff in error, Henri Vincendeau, "guilty of knowingly selling goods, wares and merchandise with counterfeit labels attached in manner and form as charged in the indictment." Motions for new trial and in arrest of judgment were made and overruled and judgment of conviction was entered against the plaintiff in error, sentencing him to an imprisonment of three months in the county jail and to pay the costs of suit. A writ of error was sued out from the Appellate Court for the purpose of reviewing this judgment of conviction, and the Appellate Court has affirmed the judgment. The present writ

of error is sued out from this court for the purpose of reviewing the judgment of affirmance so entered by the Appellate Court.

The indictment consists of two counts. The first count charges that plaintiff in error, on October 15, 1903, in Cook county, Illinois, "unlawfully did sell to one Otto Schmidt certain goods, wares and merchandise, to-wit, twenty-four bottles, each bottle then and there containing certain liquid then and there resembling champagne wine, a more particular description of which said liquid is to said jurors unknown, to each of which said bottles there was then and there attached and affixed a certain counterfeit and imitation label, as he, the said H. Vincendeau, then well knew, which said counterfeit and imitation label then and there was and is in the words and figures as follows, to-wit:

> " 'G. H. MUMM & CO.
> (Figure of Eagle)
> EXTRA DRY
> G. H. MUMM & CO.,
> REIMS, FRANCE
> Trade-mark No. 9780, Registered 7th
> Novr., 1882.
> F. de BARY & Co., NEW YORK
> Sole Agents for the U. S.'

which said counterfeit labels were then and there counterfeits and imitations of the certain labels theretofore adopted and used and then and there being used by one Peter Herman Mumm, one Matt Von Guaita, one Herman Von Mumm, partners then and there doing business as G. H. Mumm & Co., which said labels so adopted and used as aforesaid by said co-partnership were so adopted and used as aforesaid for the purpose of designating, making known and distinguishing certain goods, wares and merchandise and other products of labor as having been made, manufactured, produced, prepared, packed and put on sale by said Peter Herman Mumm, said Matt Von Guaita and said Herman Von Mumm, partners doing business as aforesaid, which said labels so adopted and used and being used as aforesaid by said co-partnership, as aforesaid, before then duly filed for

record in the office of the Secretary of State of the said State of Illinois, as by law provided."

The second count seems to be the same as the first, with the exception that the design or device charged to have been counterfeited or imitated is called a trade-mark as well as a label. That is to say, it is designated as a label only in the first count, but is described as a label and trade-mark in the second count.

ELIJAH N. ZOLINE, for plaintiff in error:

The Trade-mark act, under which this prosecution is based, does not apply to labels or trade-marks on bottles, but has merely reference to goods contained in any box, case, can or package. Rev. Stat. chap. 140, sec. 2.

Penal statutes must be strictly construed, and cannot be extended by implication.

The indictment is a nullity because it fails to show affirmatively that the owner of the label has fully complied with the provision of section 3 of the act, which provides that a certain detailed sworn statement must be first filed by the party claiming to own the label as a condition precedent to a valid registration. *State* v. *Barnett,* 159 Ind. 432; *Curtis* v. *Bradley,* 75 Ill. 180.

The omission of a single particular fact essential to constitute an offense cannot be supplied by any intendment or implication whatsoever, and renders the indictment bad at any stage of the proceedings. 1 Bishop on New Crim. Proc. secs. 98*a*, 325; *Pettibone* v. *United States,* 148 U. S. 197; *Queen* v. *Daniels,* Holt, 346; *Regina* v. *Gibbs,* 8 Mod. 58; *Commonwealth* v. *Dudley,* 6 Leigh, 613.

If a statute does not set forth all the elements necessary to constitute the offense intended to be punished, an indictment which simply follows the words of the statute is not sufficient. It must, in such case, go further, and allege with certainty all of the particular facts necessary to bring the case within the intent and meaning of the statute. If the statute

simply names the offense and provides for its punishment, or defines a crime by its legal results, an indictment which simply follows the words of the statute is not sufficient. It must go further and state the facts whence the result comes. *State* v. *Howard,* 34 L. R. A. 178; *United States* v. *Cruikshank,* 92 U. S. 558; *United States* v. *Simmons,* 96 id. 360; *United States* v. *Carl,* 105 id. 611; *Evans* v. *United States,* 153 id. 584; *State* v. *Carpenter,* 54 Vt. 551; *Schmidt* v. *State,* 78 Ind. 41; 1 Bishop on New Crim. Proc. secs. 626, 628, 629.

This is particularly true where the statute creates a new offense. *Johnson* v. *People,* 113 Ill. 99.

Where the matter, whether introductory or otherwise, is descriptive, it must be proved as laid or the variance will be fatal. Where a person or a thing necessary to be mentioned in an indictment is described with unnecessary particularity all the circumstances of the description must be proved, for they are all made essential to identity. Redfield on Evidence, (12th ed.) sec. 65.

The statute here involved does not cover counterfeit or imitation goods, but goods sold with imitation or counterfeit labels, which are not the facts proven in this case.

W. H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, (ROBERT M. HOLT, of counsel,) for the People:

On the question of *idem sonans* the law does not favor extreme technicality in regard to proof of name where the sound of names is very similar. *McDonald* v. *People,* 47 Ill. 533; *Belton* v. *Fisher,* 44 id. 32; *Rivard* v. *Gardner,* 35 id. 125; *Chiniquy* v. *Catholic Bishop,* 41 id. 148; *Dickinson* v. *Bowes,* 16 East. 110.

A court of appeals will not reverse a case upon instructions where the record fails to show all of the instructions that were given to the jury upon the trial of the case. *Pratt* v. *Gas Light Co.* 155 Ill. 531; *Roodhouse* v. *Christian,* 158 id. 137.

Where the statute seeks to punish the offense of selling, independent of and regardless of the party to whom the selling is made, then the indictment need not allege the name of the purchaser. *Cannady* v. *People,* 17 Ill. 158; *Rice* v. *People,* 38 id. 435; *Myers* v. *People,* 67 id. 503.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The sufficiency of the indictment is questioned.

Section 1 of chapter 140 (Hurd's Rev. Stat. of 1903,) provides, in substance, that it shall be unlawful to counterfeit or imitate any trade-mark, label or other device of like character, adopted or used by any person or any association or union of workingmen. Section 2 of that act denounces the offense which the defendant in error avers is charged by the indictment. That section is in words and figures following:

"Whoever counterfeits or imitates any such label, trade-mark, term, design, device or form of advertisement, or sells, offers for sale or in any way utters or circulates any counterfeit or imitation of any such label, trade-mark, term, design, device or form of advertisement, or knowingly uses any such counterfeit or imitation, *or knowingly sells or disposes of or keeps or has in his possession, with intent that the same shall be sold or disposed of, any goods, wares, merchandise, or other product of labor to which any such counterfeit or imitation is attached or affixed, or on which any such counterfeit or imitation is printed, painted, stamped or impressed,* or knowingly sells or disposes of any goods, wares, merchandise or other product of labor contained in any box, case, can or package to which or on which any such counterfeit or imitation is attached, affixed, printed, painted, stamped or impressed or keeps or has in his possession with intent that the same shall be sold or disposed of, any goods, wares, merchandise or other product of labor in any box, case, can or package to which or on which any such counterfeit or imitation is attached, affixed, printed, painted, stamped or impressed, shall be punished by a fine of not less than one

hundred (100) dollars, nor more than two hundred (200) dollars, or by imprisonment for not less than three (3) months nor more than one (1) year, or by both such fine and imprisonment."

Plaintiff in error contends that the act in question does not cover labels or trade-marks on bottles, and that as it appears from the indictment that the labels alleged to be counterfeit were upon bottles, the sale charged is not within the statute. This point is not well taken. That language of section 2 which we have above italicized includes goods, wares and merchandise of every description, no matter how packed or prepared and no matter in what contained, to which or upon which any imitation or counterfeit label is in any manner attached, affixed, printed, painted, stamped or impressed.

Section 3 of chapter 140, *supra,* provides for filing the label or other mark or device for record in the office of the Secretary of State "by leaving two (2) copies, counterparts or *fac similes* thereof with said Secretary, and by filing therewith a sworn statement specifying the name or names of the person, association or union on whose behalf such label, trade-mark * * * or form of advertisement shall be filed, the class of merchandise and a particular description of the goods to which it has been or is intended to be appropriated;" and stating that the party in whose behalf the label or other mark or device shall be filed has the right to use the same; that none other has the right to use the same or "any such near resemblance thereto as may be calculated to deceive," and that the copies, counterparts or *fac similes* filed with the affidavit are true and correct. The Secretary of State is then required, upon payment of his fees, to deliver to the person, association or union filing the label, mark or other device, as many certificates, duly attested, of the recording of the same, as such person, association or union may desire, and that certificate shall in all suits and prosecutions be proof sufficient of the adoption of such label, mark or other device.

Counsel for the People contend, erroneously as we think, that this conviction could be sustained without the label having been recorded if the proof showed that the label had been adopted or used by its owner prior to the time of the alleged offense, and that it was therefore unnecessary to show by the indictment a compliance with section 3, *supra,* in regard to recording.

A careful consideration of the various provisions of this act has led us to the conclusion that a prosecution cannot be successfully maintained under its provisions except for acts done after the copies of the label or other mark or device, with the accompanying affidavit, has been filed with the Secretary of State for record. The only method provided for establishing the fact that such label or other mark or device has been adopted or used by any person, association or union is by the certificate of the Secretary of State, and we think, therefore, that the purpose of the legislature was that no conviction should be had unless such proof could be made of the adoption of the label or other mark or device by some person, association or union. Such certificate would not be conclusive evidence that the defendant was without right to use the label, mark or other device in question, but it would be *prima facie* evidence to that effect.

The indictment fails to specifically aver the filing of the affidavit required by section 3, *supra,* and plaintiff in error urges that it is for this reason fatally defective. The allegation in this respect is, "which said labels, so adopted and used and being used as aforesaid by said co-partnership, as aforesaid, before then duly filed for record in the office of the Secretary of State of the said State of Illinois, as by law provided." An examination of the language above quoted from section 3, *supra,* shows that the manner of filing a label for record shall be by leaving two copies, or counterparts or *fac similes* thereof, with the Secretary of State, "and by filing therewith a sworn statement," etc. The averment that the labels were duly filed for record "as by law provided,"

219—31

means that the copies, counterparts or *fac similes* were left with the Secretary and that they were accompanied by the necessary sworn statement, and that such copies, counter-parts or *fac similes,* and such sworn statement, were by the Secretary of State filed for record.

The indictment is sufficient. The other objections to its validity are wholly without merit.

The proof shows that plaintiff in error, Vincendeau, was a wholesale dealer in wines and liquors in Chicago, and had been in that business for many years. Otto Schmidt, to whom the indictment charges the sale was made, was president of the Otto Schmidt Wine Company, also engaged in business in that city. Vincendeau sold to Schmidt twenty-four bottles of wine in five cases. On each bottle appeared a counterfeit of the label of G. H. Mumm & Co., mentioned in the indictment. This purchase was made by Schmidt for the company of which he was president, and it is said that there is for this reason a variance between the proof and the indictment.

We think there is no variance. The sale was in fact made to Schmidt; that is, he in person negotiated and concluded the purchase, but it does not appear that he disclosed to Vincendeau or Vincendeau's agent, at or before the time of the purchase, the fact that he was purchasing for the company. Whether he was in fact acting for himself or as agent of another is in this case, under these circumstances, wholly immaterial.

Mumm's Extra Dry is a high grade champagne made in France. The wine sold by Vincendeau to Schmidt was an inferior and cheaper kind. The genuine label duly filed for record with the Secretary of State, as mentioned in the indictment, is the label used by G. H. Mumm & Co. in selling Mumm's Extra Dry, and labels which appeared on the bottles of wine so sold by Vincendeau to Schmidt were counterfeits of G. H. Mumm & Co.'s label. Schmidt and another, called for the prosecution, testified that Vincendeau told

Schmidt that he, Vincendeau, made a "bogus champagne" from Alabama and Georgia wines, and had the imitation labels, such as appeared on the bottles sold to Schmidt, printed in Chicago, and that he put them on the bottles of "bogus champagne" which he manufactured, and that the wine which he sold Schmidt was of this manufacture and the labels of those so obtained by him.    Vincendeau denied that any such conversation took place; denied that he was engaged in the manufacture of such "bogus champagne" or that he had any such labels printed, and denied any knowledge that the labels on the bottles of wine sold to Schmidt were counterfeit.    He admitted selling the bottles of wine bearing the labels in question to Schmidt, but testified that he had theretofore loaned $100 to one August Schott, and had taken the bottles of wine in question from Schott as security for the loan; that default being made in the payment of the money borrowed, he made sale of the wine through an agent, believing the wine and labels to be genuine.    He was corroborated to some extent by Amelie, wife of August Schott, and by one Pierre Bazile.

Under these circumstances, the accused called Peter Schneider, an expressman, and proved by him that he delivered the five cases in question, under Vincendeau's direction, to the Schmidt Company, and offered to prove further by Schneider that at an earlier date he, Schneider, brought the same cases of bottles from Schott's place, on North avenue, in the city of Chicago, to Vincendeau's wholesale establishment.    This offer the court refused, saying; "Anything before the sale about these cases is immaterial."    In this the court erred.    Vincendeau's guilty knowledge is an essential ingredient of the offense.    He, by his testimony, denied that at the time of the sale he had any such knowledge, and the evidence which he sought to elicit from Schneider would have corroborated him in this regard.    We have carefully considered all the evidence in this case and are of the opinion that the guilt of Vincendeau was not so conclu-

sively proven as to make it clear that the exclusion of this testimony was harmless error.

The indictment set out certain names as those of the persons composing the firm of G. H. Mumm & Co., among which appears the name Matt Von Guaita. On the trial the prosecution sought to prove the names as laid. One witness testifying for the People stated that Von Guaita's first or given name was Max, and not Matt. Other witnesses testified that his first name was Matt; but the proof did not certainly establish Von Guaita's first name to be as stated in the indictment. It is plain that the two names are not *idem sonans. Gonzalia* v. *Bartelsman,* 143 Ill. 634; *Davids* v. *People,* 192 id. 176.

The court, however, at the request of defendant in error gave to the jury the following instruction:

"The jury are instructed that it is necessary for the People to prove the names of the partners of the G. H. Mumm & Co. firm, but that in this State the doctrine of *idem sonans* applies,—that is, where the names are so similar in sound when pronounced as to be easily mistaken, one for the other, then the proof of one will sustain the allegation of the other. The law does not favor extreme technicality in regard to proof of name where the sound of the names is very similar."

Waiving other objections, this instruction is erroneous and misleading because the term "extreme technicality" is one which has no fixed and definite meaning, and as used in this instruction it was apt to induce the jury to disregard the difference between the two names Matt and Max in case the jury had, from the evidence, any reasonable doubt as to which of these names was in fact that of the partner in question.

It is unnecessary to consider other errors assigned.

The judgment of the Appellate Court and the judgment of the criminal court will be reversed, and the cause will be remanded to the criminal court for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*