THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* REGNERUS Y. DANTUMA, Plaintiff in Error.

*Opinion filed December 21, 1911.*

1. CONSTITUTIONAL LAW—*Union Label law is not unconstitutional.* While a registered label of a union or association is not strictly a trade-mark, yet the legislature may lawfully provide for the registration of such a label and protect its use, and the act of 1891, (Hurd's Stat. 1909, p. 2249,) providing for the registration of a union label and for protection in its use, is not invalid.

2. CRIMINAL LAW—*what constitutes a fatal variance in prosecution for violation of Union Label law.* Where the information charges that the union label infringed was the registered label of a certain association but the proof shows that it was the registered label of another association there is a fatal variance; and such variance is not cured by taking leave to amend the information, if the amendment is not, in fact, made.

3. SAME—*what is not a violation of Union Label law.* The fact that a person who has no right to use a certain registered union label takes a contract calling for a commodity bearing such label and sub-lets the contract to a person having a right to use such label does not constitute a violation of the Union Label law of 1891, there being no provision in the contract against sub-letting, and no bad faith or intention on the part of the contractor, by subterfuge or otherwise, to use or display such label unlawfully.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. JACOB H. HOPKINS, Judge, presiding.

THOMAS F. MONAHAN, (JESSE HOLDOM, of counsel,) for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and W. EDGAR SAMPSON, (ZACH HOFHEIMER, of counsel,) for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a criminal prosecution commenced in the municipal court of Chicago against Regnerus Y. Dantuma and Gean Forget, doing business as "The Galbraith Press," for violating section 5 of chapter 140 of Hurd's Statutes of 1909, by unlawfully using and displaying the union label of the Allied Printing Trades Council of Chicago on 120,000 cards which they printed, upon the order of J. L. Clark, for St. Vincent's Infant Asylum. A jury was waived and the case was tried by the court, and at the close of all the evidence Forget was discharged and a fine of $100 was imposed upon Dantuma, and he was ordered to stand committed until the fine and costs were paid. He has sued out a writ of error from this court to review said judgment, and has assigned as error, first, that the statute under which he was prosecuted and convicted is unconstitutional; and secondly, conceding said statute to be constitutional, that the evidence was not sufficient to support the conviction.

Sections 1, 3 and 5 of the statute under consideration read as follows:

"Sec. 1. Whenever any person or any association or union of workingmen, has heretofore adopted or used, or shall hereafter adopt or use any label, trade-mark, term, design, device or form of advertisement for the purpose of designating, making known or distinguishing any goods, wares, merchandise or other product of labor as having

been made, manufactured, produced, prepared, packed or put on sale by such person or association or union of workingmen, or by a member or members of such association or union, it shall be unlawful to counterfeit or imitate such label, trade-mark, term, design, device or form of advertisement, or to use, sell, offer for sale, or in any way utter or circulate any counterfeit or imitation of any such labels, trade-mark, term, design, device or form of advertisement.

"Sec. 3. Every such person, association or union that has heretofore adopted or used, or shall hereafter adopt or use, a label, trade-mark, term, design, device or form of advertisement, as provided in section one (1) of this act, shall file the same for record in the office of the Secretary of State, by leaving two (2) copies, counterparts or *fac similes* thereof with said secretary, and by filing therewith a sworn statement specifying the name or names of the person, association or union on whose behalf such label, trade-mark, term, design, device or form of advertisement shall be filed the class of merchandise and a particular description of the goods to which it has been or is intended to be appropriated; that the party so filing, or on whose behalf such label, trade-mark, term, design, device or form of advertisement shall be filed, has the right to the use of the same, and that no other person, firm, association, union or corporation has the right to such use either in the identical form or in any such near resemblance thereto as may be calculated to deceive, and that the *fac simile* copies or counterparts filed therewith are true and correct. There shall be paid for such filing and recording a fee of one (1) dollar. Any person who shall for himself, or on behalf of any other person, association or union, procure the filing of any label, trade-mark, term, design, device or form of advertisement in the office of the Secretary of State, under the provisions of this act, by making any false or fraudulent representations or declarations, verbally or in

writing, or by any fraudulent means, shall be liable to pay any damages sustained in consequence of any such filing to be recovered by or on behalf of the party injured thereby in any court having jurisdiction, and shall be punished by a fine not exceeding two hundred (200) dollars or by imprisonment not exceeding one year or both such fine and imprisonment. The Secretary of State shall deliver to such person, association or union so filing or causing to be filed any such label, trade-mark, term, design, device or form of advertisement so many duly attested certificates of the recording of the same as such person, association or union may apply for, for each of which certificates said secretary shall receive a fee of one (1) dollar. Any such certificate of record shall in all suits and prosecutions under this act be sufficient proof of the adoption of such label, trade-mark, term, design, device or form of advertisement. Said Secretary of State shall not record for any person, union or association any label, trade-mark, term, design, device or form of advertisement that would reasonably be mistaken for any label, trade-mark, term, design, device or form of advertisement theretofore filed by or on behalf of any other person, union or association.

"Sec. 5. Every person who shall use or display the genuine label, trade-mark or form of advertisement of any such person, association or union, in any manner not authorized by such person, union or association, shall be deemed guilty of a misdemeanor, and shall be punished by imprisonment in the county jail not less than three months nor more than one year, or by a fine of not less than $100 nor more than $200, or both. In all cases where such association or union is not incorporated, suits under this act may be commenced and prosecuted by any officer or member of such association or union on behalf of and for the use of such association or union."

The facts, in brief, are as follows: In June, 1911, Clark called up Dantuma on the 'phone at the place of busi-

ness of the Galbraith Press and said to him he wanted to have 120,000 cards printed for "field day" for the benefit of St. Vincent's Infant Asylum and that he wanted the union label thereon. Dantuma replied he could print the cards but he did not have the right to use the union label. Clark then asked him if he could not have the printing done with the union label on, and he replied he could. Dantuma thereupon caused a proof of the card to be set up in the Galbraith Press office with the exception of the union label, and arranged with one F. W. Colwell, who had the right to use the union label, to place thereon the union label and to have the plate as then completed electrotyped, and the cards were then printed and delivered to Clark or to the St. Vincent's Infant Asylum. The evidence was conflicting as to whether the printing was done at the office of the Galbraith Press or at the office of Colwell.

The information charged the defendants with wrongfully using the union label of the Allied Printing Trades Council of Chicago, and to prove the charge introduced in evidence a certificate of the Secretary of State showing a union label registered by the International Typographical Union of North America, of Indianapolis, Indiana. When the proof was in, leave was granted the State to amend the information by striking out the words "Allied Printing Trades Council of Chicago," and inserting in lieu thereof the words, "International Typographical Union of North America, of Indianapolis, Indiana," but the information was not amended.

It is urged by the plaintiff in error that the union label involved in this case, or any union label for that matter, is not a trade-mark, in this: that it does not show origin or ownership within the meaning of those terms as the same are used in the law pertaining to trade-marks, (*Kidd* v. *Johnson*, 100 U. S. 617; *Manufacturers' Co.* v. *Trainer*, 101 id. 51; *Columbia Mills Co.* v. *Alcorn*, 150 id. 46;) and that a registered union label not being a trade-mark, it

cannot be protected and its use by others prohibited by law. We think it may be conceded that a union label like the one here sought to be protected does not fall within the meaning of a trade-mark in the broad sense in which that term is used at common law. (*Cigar-Makers' Protective Union* v. *Conhaim,* 40 Minn. 243.) Still, we think the legislature may lawfully provide for the registration of a union label similar to the one herein involved and protect its use, and such is the holding of the courts of last resort in Massachusetts and Kentucky. (*Tracy* v. *Banker,* 170 Mass. 266; *Hetterman Bros. & Co.* v. *Powers,* 102 Ky. 133. See, also, *State* v. *Bishop,* (Mo.) 29 L. R. A. 200; *Schmalz* v. *Woolley,* (N. J.) 43 id. 86; *People* v. *Luhrs,* 195 N. Y. 473.) And this court is, we think, committed to that view in *Cohn* v. *People,* 149 Ill. 486.

We see no valid reason, and none has been suggested by counsel, why those engaged in skilled employment may not so designate the result of their labor by a union label as to enable them to secure to themselves the fruit of their skill. The skilled workman by his labor creates wealth, and if the employer of labor can by a registered trade-mark secure to himself the wealth which he has created by his industry, there can in law or justice be no reason why the man who labors, and who by his skill and industry has created a demand for a particular commodity that secures for him more remuneration, may not be equally protected by a registered label which notifies the public that the commodity offered for sale and upon which skilled labor has been expended was manufactured or created by skilled labor. We are therefore of the opinion the act providing for the registration and the protection from use by others of a union label is a valid, constitutional enactment.

The information alleged that the label infringed was the registered union label of the Allied Printing Trades Council of Chicago, while the evidence showed the label used in printing the cards delivered to Clark or the St. Vin-

cent's Infant Asylum by the defendants was the registered label of the International Typographical Union of North America, of Indianapolis, Indiana. There was here, therefore, a fatal variance between the information and the proof. This variance was sought to be obviated by an amendment to the information, but no amendment was made. The variance was, therefore, not cured. It is said, however, in the brief filed by the People that there was no variance, as the Allied Printing Trades Council of Chicago was a subordinate branch of the International Typographical Union of North America, of Indianapolis, Indiana, and had the right to use and control said label. This may be true, but the evidence does not show that fact, and upon the face of the record the variance is fatal to a conviction.

It also appears from the testimony of Colwell that the contract for the printing of the 120,000 cards, which is the basis of this prosecution, was sub-let to him, and that he did the printing of said cards at his office and used the union label in so doing, as he had the right to do. While his testimony was contradicted by that of A. Bartels, we do not think the uncorroborated testimony of Bartels upon that subject sufficient to sustain a conviction. He was a discharged employee of the defendants, and his testimony in many particulars was very uncertain and unsatisfactory. There was nothing in the contract between the defendants and Clark which prevented the defendants from sub-letting their contract with Clark to Colwell, and if they had sub-let such contract in good faith and without the intention, by subterfuge or otherwise, of using or displaying unlawfully the union label upon said cards, they, or either of them, would not be liable to a prosecution under the statute.

The judgment of the municipal court of Chicago will be reversed and the case remanded.

*Reversed and remanded.*