THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MAX STRICKER, Plaintiff in Error.

*Opinion filed June 18, 1913.*

1. CRIMINAL LAW—*when information need not expressly allege that sale was unlawful.* An information charging the sale of a bottle of gin bearing a false label, in violation of the act to protect associations, unions and persons in their labels and trade-marks, need not expressly allege that the sale was unlawful, where it sets out the facts showing a sale in violation of the act.

2. SAME—*an information need not allege to whom the sale was made.* The act to protect associations, unions and persons in their labels and trade-marks prohibits sales generally, without regard to the persons or class of persons to whom such sales are made, and it is therefore not necessary for an information charging a sale in violation of the act to allege to whom the sale was made.

3. SAME—*information may describe alleged counterfeit label in general terms.* An information charging a sale of a bottle of gin bearing a counterfeit label, in violation of the act to protect associations, unions and persons in their trade-marks and labels, may describe the alleged counterfeit label in general terms; and it is not necessary to set it out *in hæc verba* or offer an excuse for not doing so, as the offense charged does not consist in the counterfeiting of the label but in making the sale in violation of the act.

4. SAME—*People must show that owner of label is within the class protected by the statute.* Where an information charges the sale of a bottle of gin bearing a false label purporting to be a label adopted and used by "Tanqueray, Gordon & Co., a corporation," in violation of the act to protect associations, unions and persons in their labels and trade-marks, there must be some proof that the owner of the label so counterfeited is a corporation, and a convic-

tion cannot be sustained if the proof shows that Tanqueray, Gordon & Co. is a partnership of individuals.

5. SAME—*purpose of the act to protect labels and trade-marks.* The purpose of the act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising is not to protect society or the public, but is to protect the property rights of the associations, unions and persons so mentioned; and hence an information charging a violation of such act must show an invasion of a property right possessed by some legal entity.

6. SAME—*partnership is not a "person" as distinguished from individual members.* A corporation is embraced within the word "persons," but a partnership is not a person as distinguished from the members composing the firm.

WRIT OF ERROR to the Branch "D" Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding.

RICHARD J. COONEY, and JOHN A. VERHOEVEN, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN E. W. WAYMAN, State's Attorney, and D. B. SNOW, (SHERIFF, DENT, DOBYNS & FREEMAN, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Max Stricker was charged in an amended information, filed in the municipal court of Chicago, with violating the act entitled "An act to protect associations, unions of workingmen and persons in their labels, trade-marks and forms of advertising," in force July 1, 1891, (Laws of 1891, p. 202,) as amended by act in force July 1, 1895, (Laws of 1895, p. 320,) by selling a bottle containing a liquid resembling gin, to which bottle was attached a counterfeit or imitation label purporting to be a report on Gordon & Co.'s "dry gin," London, dated September 2, 1899, by one

E. Godwin Clayton, F.I.C., F.C.S., consulting chemist and analyst, which label, as the defendant knew, was then and there a counterfeit and imitation of a label adopted and used, and then and there being used, by Tanqueray, Gordon & Co., a corporation organized under the laws of Great Britain, which label was filed in the office of the Secretary of State on February 20, 1907. The court overruled a motion to quash the information, and upon a trial by jury the defendant was found guilty. The court sentenced the defendant to confinement in the house of correction for ten months and to pay a fine of $200 and costs. The judgment was affirmed in the Appellate Court for the First District, and the writ of error in this case has brought the record to this court for review.

It is argued that the court erred in overruling the motion to quash the information because it did not allege that the sale was unlawful nor to whom it was made and did not set out the counterfeited label nor offer any excuse for not doing so. The information alleged facts showing a violation of the act, and the sale was therefore unlawful and it was unnecessary to so characterize it. The act prohibits sales generally, without regard to the persons or class of persons to whom they are made, and it was not necessary to allege to whom the sale in this instance was made. The information did not contain a copy of the alleged counterfeit label but described it generally, by its dimensions and the purport of the words upon it. Where the offense charged is counterfeiting an instrument it is necessary to set it out verbatim, unless it is in the possession of the accused, destroyed or for some reason is not accessible to the grand jury or informant, in which case the excuse for not setting it out must be averred. The reason for the rule is, that the court must construe the instrument and determine whether it might be the subject of forgery. (*People* v. *Tilden,* 242 Ill. 536.) The defendant in this case was not charged with counterfeiting a label but with

knowingly selling a bottle upon which there was a counterfeit label, and the contents of the label being merely incidental to the offense of selling goods bearing a false label, it was sufficient to describe the label in general terms. (22 Cyc. 354.) The court did not err in refusing to quash the information.

The information alleged that the counterfeit label was adopted and used, and was then and there being used, by Tanqueray, Gordon & Co., a corporation organized under the laws of Great Britain. It is conceded that if there had been evidence that Tanqueray, Gordon & Co. was a corporation there would be no necessity of proving that it was organized under the laws of Great Britain, and this is necessarily so, for the reason that in criminal prosecutions user is *prima facie* evidence of the existence of a corporation. (Laws of 1889, p. 115.) It was necessary, however, to prove the averment of the information that Tanqueray, Gordon & Co. was a corporation, to bring it within the classes named in the statute who might adopt and use a label and be injured by sales of gin purporting to be its product. There was not only an entire absence of any such evidence, but the evidence tended to prove that Tanqueray, Gordon & Co. was a partnership of individuals. John M. Boteler testified that the label was that of Tanqueray, Gordon & Co.; that Mr. Digby Maitland, one of the firm, brought all of the labels of the firm to this country and exhibited them to him, and he derived the knowledge that the original proofs were such in fact, from that member of the firm.

The Attorney General contends that it was unnecessary to prove that Tanqueray, Gordon & Co. was a corporation because the crime created by the statute is merely the sale of goods with a counterfeit label attached. That position cannot be maintained, because it is not the purpose of the act to protect society against the sale of things injurious to the public, such as intoxicating liquors, adulterated or un-

healthful food, or things of that kind. The title of· the
act, where the single subject of it must be declared, shows
that subject to be the protection of associations, unions of
workingmen and persons in their labels, trade-marks and
forms of advertising. The act contains no provision for
the protection of society or the public, but all of its provi-
sions are solely for the benefit of those who adopt or use
labels, trade-marks, designs, devices or forms of advertise-
ment. The purpose of the act is to secure to the one who
produces a product the fruits of his labor or skill, regard-
less of the question whether the product be gin, food or
anything else. The purpose of the act being to protect
property rights, the wrong done by a violation of the act
is a wrong to the one who owns the property right in the
label, trade-mark or form of advertising. An information,
therefore, must show an invasion of a property right pos-
sessed by some legal entity. There is no distinction be-
tween an·information in such a case and the charge that
the property of some person has been stolen or embezzled,
where the ownership of the property must be alleged with
accuracy. (*Wallace* v. *People,* 63 Ill. 451; *Staaden* v. *Peo-
ple,* 82 id. 432; *People* v. *Brander,* 244 id. 26.) A corpo-
ration is embraced within the name "person," but in the
law of this country a partnership is not a person as dis-
tinguished from the members composing the firm in whom
the right of property exists.

The precise question involved in this case has been twice
determined by this court. In *Vincendeau* v. *People,* 219
Ill. 474, Vincendeau was charged with selling twenty-four
bottles containing a liquid resembling champagne, to which
was·attached a counterfeit label of G. H. Mumm & Co.,
alleged to have been a counterfeit of the label copyrighted
and used by Peter Herman Mumm, Matt Von Guaita and
Herman Von Mumm, partners doing business as G. H.
Mumm & Co. There was evidence that the firm was com-
posed of the persons named in the indictment, but there

was one witness who said Von Guaita's name was Max and not Matt. The court instructed the jury that it was necessary for the People to prove the names of the partners but that the doctrine of *idem sonans* applied, and the law did not favor extreme technicality in regard to proof of the name where the sound of the names was very similar. The judgment was reversed, and it was said that the instruction was apt to influence the jury to disregard the difference between the two names, Max and Matt, in case the jury had any reasonable doubt as to which of the names was, in fact, that of the partner in question. The instruction deprived Vincendeau of the benefit of evidence that the name of Von Guaita was Max, and it was error, because the defendant could not be convicted if that was his name. In *People* v. *Dantuma,* 252 Ill. 561, the information charged that the label was that of the Allied Printing Trades Council of Chicago, while the evidence showed that the label was that of the International Typographical Union of North America, of Indianapolis, Indiana, and it was held that there was a fatal variance between the evidence and the proof. In this case there was not only a failure to prove the existence of a corporation adopting and using the label and having a property right therein, but there was a material variance between the information and the evidence. The defendant's attorney asked a witness if there was not a suit pending in a circuit court of the United States entitled in the name of Tanqueray, Gordon & Co., a corporation, as complainant, and Max Stricker as defendant. The court did not permit the question to be answered, and as questions do not constitute evidence, the question did not tend to show the existence of a corporation, and asking the question was not an admission of corporate existence.

The judgments of the Appellate Court and municipal court are reversed and the cause is remanded to the municipal court. *Reversed and remanded.*