CIGAR-MAKERS' PROTECTIVE UNION *vs.* DAVID E. CONHAIM and others.

### March 11, 1889.

**Trade-Mark—Symbol Adopted by Trade Union.**— The Cigar-Makers' Union, having many thousands of members, adopted or agreed upon a certain symbol or device to be used by their several members, by placing it on boxes of cigars made by such members; such device not indicating by what persons the cigars are made, but only that they are made by some member of one of such unions, the right to use the device belonging equally to each of all the members, and continuing only while the person remains a member.   *Held*, not a legal trade-mark.

Appeal by defendants from an order of the district court for Ramsey county, *Simons*, J., presiding, overruling a demurrer to the complaint.   The grounds of demurrer were (1) failure to state a cause of action; (2) plaintiff's want of legal capacity to sue, and (3) defect of parties plaintiff.

*T. R. Palmer*, for appellants.

*E. St. Julien Cox*, for respondent.

GILFILLAN, C. J.   This case stands on a demurrer to the complaint.   The only ground of demurrer necessary to consider is that the complaint does not state facts sufficient to constitute a cause of action.   Whatever may be said or thought of the conduct of the defendants, in the matter of honesty and good morals, in using the peculiar symbol adopted by the plaintiff and those it represents, to indicate the goods manufactured by them, the case must be decided on considerations of strict legal right of the plaintiff in that symbol as a thing of property.

From the allegations of the complaint it appears that cigar-makers throughout the United States, amounting to many thousand in number, have joined themselves into local associations called "local unions," of which this plaintiff is one, it being incorporated for the purpose of such association or union, and that the various local unions are in some way joined together, forming what is called "The Cigar-Makers' International Union;" and that the latter, and the state or local unions, have devised and adopted a certain symbol, which the complaint claims to be a legal trade-mark, for the exclusive use and protection of the cigar-makers who are members of such unions, and of those manufacturers and others who employ them. It does not appear that either the plaintiff or any one of said unions is a business corporation, association, or partnership, for the purpose of or engaged in the manufacture or sale of cigars. We gather from the complaint that any one joining any of said local unions thereby acquires the right to use the device, and that his right continues so long as he remains a member of such union, and ceases when he ceases to be such member; that a manufacturer employing others acquires the right to use it only by employing members of some such union, and loses the right to use it when he ceases to employ such members. There may, then, be on one day 100,000 (if there be so many members of such unions) who have a right to use the symbol, and the next day not 1,000, (if the membership of the unions shall have fallen so low,) and of those whose right to use it has ceased perhaps not one has changed his business, either as to its place, or the kind or quality of cigars made by him. And it may be that no two entitled to put the symbol on the cigars made by them are in any way connected in business. They may be rivals in business, the knowledge and skill of one pitted against the knowledge and skill of the other, and the interests of one adverse to the interests of the other. The right to use it does not seem dependent on the fact that the individual either makes or sells cigars for himself. He may place it on boxes of cigars in which he has no interest whatever. The right to use it does not seem to be transferable with the business in which it may have been used. When placed on a box of cigars, the symbol does not indicate the kind or quality, nor by whom made. Any one

seeing it on a box of cigars (however familiar he may be with the use of it) could not tell who of the many thousands of individuals authorized to use it had made, or caused to be made, the cigars in the box. All that he could learn from it is that the cigars were made by some one of the many thousand entitled to use the symbol. In other words, the symbol indicates only that the person using it is one of the many thousand members of the Cigar-Makers' Union.

The right in trade-marks, or the exclusive right to use certain symbols or devices placed upon goods offered for sale, is property. Hence the law affords a remedy to the owner against one who violates the right. A trade-mark consists of a word, mark, or device adopted by a manufacturer or vendor to distinguish his productions from other productions of the same article. *Hostetter* v. *Fries*, 17 Fed. Rep. 620. The theory on which the right to it as property is based, is that a man may have acquired a reputation for excellence in the manufacture or preparation of a certain article for sale, which reputation may be the source of profit to him. In the enjoyment of this reputation, and of the benefit and pecuniary advantages thereof, he ought to be protected as he ought to be and is in the advantages of the good-will of a business established by him; and so that the purchasing public may know the origin of such articles when offered for sale, and that they are of his manufacture or preparation, he may adopt and place on them, as the index of their origin, some device or symbol not used by others upon similar articles, which, by such adoption and by use in connection with his articles, comes to be known as representing that the articles on which they are placed are made or prepared by him, just as his signature to a business paper is an assurance to others that he executed it. It has, indeed, been likened to his business autograph. The wrong for which a remedy is given consists in misrepresenting to the public, by the use of his trade-mark, goods or wares of another as having been made by the true owner of the mark, and thereby depriving him to a greater or less extent of the benefit of the good-will of his establishment, and the reputation that he has given the articles made by him. *Stokes* v. *Landgraff*, 17 Barb. 608.

It is essential that the symbol or device shall be adopted to dis-

tinguish the productions of the manufacturer or vendor from those of others, and it must so distinguish them. "The trade-mark must, either by itself or by association, point distinctly to the origin or ownership of the article to which it is applied." *Canal Co.* v. *Clark*, 13 Wall. 311, 323. It must indicate, to those familiar with its use and purpose, by or for whom the article was made, produced, or prepared for sale. If such be not its purpose and meaning, it fails of being a legal trade-mark. The right to it cannot exist as a mere abstract right, independent of or disconnected from the business in which it is used. It is not property except as an incident to such business. It cannot be transferred except with the business. *Congress & Empire Spring Co.* v. *High Rock Congress Spring Co.*, 57 Barb. 526; *Dixon Crucible Co.* v. *Guggenheim*, 2 Brewst. 321; *Lockwood* v. *Bostwick*, 2 Daly, 521; *Derringer* v. *Plate*, 29 Cal. 292, (87 Am. Dec. 170;) *McVeagh* v. *Valencia Cigar Factory*, Am. Trademark Cas. 970. In this particular it resembles the good-will of a business. One having acquired the right to a trade-mark in the business of manufacturing or preparing a particular article for sale may sell the trade-mark with the business, but not separate from it.

Apply the foregoing definition and essentials of a legal trade-mark to the facts of this case, and it is apparent that the device in question cannot be a trade-mark, and the right to use, as such right is shown by the complaint, is not property, but a mere personal privilege; or, rather, the use of it on cigars is only an advertisement of the fact that the person using it is a member of one of the Cigar-Makers' Unions. Clearly, to indicate what person, firm, or corporation made the cigars in any box on which the mark is placed, is not the purpose of its adoption and use. Its purpose is only to indicate membership in the union. The complaint claims for the international and local unions the right to the trade-mark, and the right to confer the privilege of using it on those they admit to membership; but it does not appear that they were ever, as unions, engaged in manufacture or trade, or that they were formed for any such purpose. The case comes just to this: The cigar-makers have formed themselves into associations, and, to secure to the members whatever benefit in their business the fact of membership may give them, they

agree on a certain device to be placed on their productions as a sign of membership. We might suppose any other association of persons, a church, the order of Free Masons or Odd Fellows, to agree that its several members shall put a particular device on articles manufactured by them for sale, so that the members may mutually assist each other by means of such device. Now, the right to use such a device being got merely by joining the association, and not depending at all on the person having earned a reputation or good-will for the manufacture of the particular article, it could not be regarded as a lawful trade-mark. Such a case would not materially differ from this. It is true the members of the unions are all engaged in the same kind of business, to wit, the making of cigars. But they are not engaged in business together. The business and business interests of one are as distinct from those of another as though they followed entirely different kinds of business. In these particulars the device is wanting in the essential characteristics of a legal trade-mark: *First.* It is not adopted nor used to indicate by what person the articles were made, but merely to indicate membership of a certain association. *Second.* Its use is not enjoyed as an incident to any business, and the right to use it cannot be transferred, even with the transfer of the business in which it may have been employed; the right to use it can be acquired only by becoming a member of one of the unions or employing those who are members, and lost only by ceasing to be a member or to employ members. *Third.* There is no exclusiveness in the use, or right to use, which is necessary to a legal trade-mark. Browne, Trade-Marks, §§ 143, 309, 324. Any one of many thousands of persons, no way connected in business, and perhaps unknown to each other, has an equal right to its use.

Order reversed.

MITCHELL, J., *(dissenting.)* While I assent to the general rules of law regarding the rights of property in trade-marks and labels as laid down in the opinion of the court, yet it seems to me that they are not correctly applied to the facts of this case. It appears from the complaint that the Cigar-Makers' Union is an association of

practical cigar-makers; that, by reason of the experience and care of the members in the manufacture of cigars, "union-made cigars" have acquired a high reputation, and have become favorably and widely known in the market as a valuable and reliable cigar, and for that reason command an extensive sale, which is a source of great profit to the members of the union. It is undoubtedly true that a right of property in either a trade-mark or a label cannot be acquired by mere selection. It must also have been applied to some vendible commodity. But I cannot see why, even under this rule, an association whose members are engaged in the same trade, although not itself engaged as an association in the business of manufacturing, may not adopt a label or other device for the use and benefit of its members who are thus engaged, to be applied to articles produced by them to distinguish them from those produced by others, so that they may have the benefit of the superior reputation of their products in the market, resulting from their superior skill and care in manufacturing such articles. Neither do I see why the application of such symbol by the members to the articles made by themselves is not a sufficient application of it, within the rule suggested; or, when thus applied, why it does not sufficiently indicate, within another rule laid down in the opinion, the origin of the article. It shows that it was made by a member of the union, although not the particular member by whom made. To my mind, this is the controlling question in this case; for, if the association can thus adopt a label or symbol for the use of its members in this way, it would seem necessarily to follow that such use must be limited to members; and the fact that these members are not connected together in business is unimportant. The whole system of labor or trades unions is comparatively modern, and perhaps no case can be found in the books involving a similar state of facts. But it is one of the chief excellencies of the common law that its principles are capable of application to new conditions as they arise, and I think that it but needs a correct application of old principles to the new state of facts to protect the membership of this union in the benefits of their superior skill and experience as cigar-makers, against the unfair competition of one who fraudulently imitates or counterfeits the label adopted to distinguish their work-

manship from that of others.     The adoption of this label by the union may be a mere device for boycotting those who employ non-union labor, but we cannot assume this, as against the allegations of the complaint, which must be here taken as true.

VANDERBURGH, J.     I concur in the opinion of Justice Mitchell.