[L. A. No. 6970. In Bank.—June 1, 1923.]

YELLOW CAB COMPANY OF SAN DIEGO (a Corporation), Appellant, v. SAMUEL SACHS et al., Respondents.

[1] TRADE NAMES—UNFAIR COMPETITION—EQUITY.—In the interest of fair commercial dealing, courts of equity, where one has been first in the field doing business under a given name, will protect that person to the extent of making competitors use reasonable precautions to prevent deceit and fraud upon the public and upon the business first in the field.

[2] ID.—INJUNCTION—PRIORITY OF USE OF NAME AND SLOGAN.—A corporation named, "Yellow Taxicab Company of San Diego," with the trade phrase or slogan, "The cab that took the tax out of taxi," cannot enjoin several individuals from using a similar trade name, under which they have been and are doing business, and from using the trade phrase or slogan, "The cab that takes the tax out of taxi," in connection with said business, in a certain locality, where the appropriation and use by said individuals of said trade name and slogan in the particular locality are prior to said corporation's.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

Haines & Haines for Appellant.

---

Territorial extent of right to trade name used in limited locality where used by another in a different locality, notes, 5 Ann. Cas. 560; Ann. Cas. 1914C, 931; 2 L. R. A. (N. S.) 964; 35 L. R. A. (N. S.) 251; L. R. A. 1916D, 143.

A. Rosenthal for Respondents.

RICHARDS, J., *pro tem.*—The plaintiff in this action sought to have the defendants enjoined from the further use of a certain trade name and slogan in the city of San Diego, to the use of which the plaintiff claimed to be exclusively entitled. The trial court granted the defendants' motion for a nonsuit at the close of the plaintiff's case and thereupon ordered and entered its judgment in the defendants' favor. It is from such judgment that this appeal has been taken.

The following are the facts educed at the trial and which for the purposes of this appeal are taken to be true. For several years prior to 1920 the Walden W. Shaw Company, a corporation having its principal place of business in Chicago, Illinois, was engaged in the business of manufacturing, operating, dealing in, renting, and repairing automobiles, taxicabs, motor-cars, and like vehicles for the transportation of passengers and goods. In the development of this business it came to devote its particular attention to the production of a standardized form of taxicab for urban use. In the month of August 1920, this corporation, by proceedings duly taken, caused its name to be changed to "Yellow Cab Manufacturing Company" and devoted its attention to the manufacture wholesale of these particular cabs, organizing a subsidiary corporation for the purpose of operating a system of these taxicabs in the city of Chicago. It also extended its operations to other cities by encouraging therein the organization of local taxicab corporations or concerns to which it would sell its standardized product, to be operated upon the system adopted by it in Chicago, which involved the uniforming of drivers and their training in courtesy to the public, a particular method of keeping track of the tariffs charged and of bookkeeping generally, and, among other things, the use of a certain trade slogan invented or adopted by the parent corporation and reading: "The cab that took the tax out of taxi." The prevailing color of the taxicabs thus introduced in various communities was yellow, though other colors were employed in the larger cities where more than one subsidiary concern was put in operation. The relation between the Chicago corporation and the local corporations or concerns was not otherwise financial, the only

interest of the so-called parent corporation being that of encouraging the organization of these local enterprises in order to expand its trade and its particular style of taxicab. In the month of May, 1920, a corporation was organized in Los Angeles under the name of the "Yellow Taxicab Company of Los Angeles," for the purpose of putting into operation yellow cabs in that city purchased from and under the trade name, slogan, and system of the Chicago concern. In the meantime, and for some time prior thereto, the defendants herein had been engaged in conducting a taxicab business in the city of San Diego under the name of "Smith Taxicab Company"; but in the summer of 1920 said firm decided to change its name to "Yellow Taxicab Company of San Diego" and to operate a system of yellow cabs under said name. The firm began such operation about the first of September, 1920, in said city, and on October 7, 1920, adopted as its trade slogan the phrase "the cab that takes the tax out of taxi," causing an advertisement to be inserted in the local telephone directory of their said name and slogan. They also and in December, 1920, began advertising their business in the newspapers of said city under said name and slogan and continued to do business thereunder until stopped by the preliminary injunction issued in this case in the latter part of January, 1921. In the meantime and during the month of October, 1920, one M. T. Uhler began negotiations looking to the establishment of a yellow taxicab service in the city of San Diego under the system adopted and expanded by the Chicago corporation, and on the twenty-ninth day of November, 1920, caused to be filed articles of incorporation of a corporation to be known as "Yellow Taxicab Company of San Diego," to which corporation said Uhler assigned a contract which earlier in that month he had obtained from the Chicago corporation for the purchase of certain of their taxicabs. Having done this, he proceeded to finance said corporation through the sale of stock in the city of San Diego for the purpose of completing the purchase of said taxicabs and of installing said Chicago system of operation in said city. In pursuance of said purchase the corporation thus organized sought public support through advertisements inserted in the local newspapers explaining its said purposes and using the phrase adopted by the Chicago concern: "The cab that took the tax out of taxi." This

corporation did not, however, actually engage in the business of operating yellow taxicabs or of using said trade slogan in connection with their said operation until the twenty-third day of February, 1921, when it put in operation three of the twenty-six taxicabs which had been thus ordered by and shipped to said Uhler under his contract with the Chicago concern, but which were not to be released for operation except as they were paid for. The present action was commenced by said corporation on January 24, 1921, about a month prior to the actual beginning of the operation and use of any of the plaintiff's said taxicabs or of said trade phrase or slogan in connection with their said operation and use. In its complaint herein the plaintiff set forth with much of detail the history and development of the business and system of the Chicago corporation and of its use of the trade name "Yellow Cab Manufacturing Company" and of the trade phrase or slogan: "It took the tax out of taxi." It also set forth in detail the activities of the said M. T. Uhler in his endeavor to introduce said system of taxicab service under said trade name and slogan into the city of San Diego. It also set forth in its complaint the history of the activities and operation of said defendants under the firm name of "Yellow Taxicab Company of San Diego" and with the use of the trade phrase or slogan "It takes the tax out of taxi"; which acts, as plaintiff alleged, interfered with the exclusive rights which the Chicago corporation had acquired and to which the plaintiff had succeeded to the use in the said city of San Diego of said trade name and said trade phrase or slogan. Upon filing said complaint it procured a preliminary injunction temporarily preventing the defendants from the further operation of their said business under said trade name and by the use of said trade phrase or slogan. Upon the trial of the cause the facts as above set forth were presented in evidence in support of the plaintiff's case, at the close of which the defendant moved for a nonsuit, which motion being granted and judgment thereon entered, this appeal was taken.

It may be stated, upon the threshold of our consideration of the issues involved in this appeal, that no question relative to trademarks or the rights to particular designations or slogans which may be acquired thereby under state or

191 Cal.—16

federal enactments is involved in this appeal. Neither the plaintiff nor the Chicago concern under whose encouragement it was organized had or could probably have acquired any exclusive trademark rights in or to the use of the name "Yellow Taxicab Company" or in or to the use of the slogan: "It took the tax out of taxi." The only rights which the plaintiff or its *quasi* parent, the Chicago corporation, could have or could assert in this action would be those arising out of the actual appropriation and use of such trade name and trade phrase or slogan in the particular locality and out of the defendants' fraudulent interference with the plaintiff's business growing out of such use through unfair competition. In so far as the Chicago corporation is concerned it is clear that it never acquired any rights in or to the exclusive appropriation of either said name or slogan through any use thereof in the city of San Diego; and never having acquired such rights it is plain that it neither did nor could transfer any such rights to the plaintiff herein. The law governing the use of trademarks, trade names and trade slogans is fairly well settled in this state. As to trademarks the Civil Code, section 991, clearly defines and limits the kind of designations which may be appropriated and protected under its terms and under the provisions of the Political Code and Penal Code relating to trademarks (Pol. Code, secs. 3196–3198; Pen. Code, secs. 350–354); and as we have seen, the plaintiff claims no rights under these code provisions. As to trade names, this court, in the recent case of *Dunston* v. *Los Angeles Van etc. Co.,* 165 Cal. 89 [131 Pac. 115], has declared the principle governing the appropriation and use of trade names other than trademarks and has collated the authorities supporting it as follows:

[1] "As the judgment cannot thus be supported upon the theory of an invasion of an exclusive right to property in a trademark, the only ground for the support of the judgment is that which has come to be known as 'unfair trade dealing.' This is but a succinct statement of the principle. that in the interest of fair commercial dealing courts of equity, where one has been first in the field doing business under a given name, will protect that person to the extent of making competitors use reasonable precautions to prevent deceit and fraud upon the public and upon the business first in the field. (*Spieker* v. *Lash,* 102 Cal. 38 [36 Pac. 362];

*Waltham Watch Co.* v. *United States Watch Co.,* 173 Mass. 85 [73 Am. St. Rep. 265, 43 L. R. A. 826, 53 N. E. 141]; *Shaver* v. *Shaver,* 54 Iowa, 208 [37 Am. Rep. 194, 6 N. W. 188]; *Newman* v. *Alvord,* 51 N. Y. 189 [10 Am. Rep. 588].) But, as has been intimated. relief in such cases really rests upon the deceit or fraud which the later comer into the business field is practicing upon the earlier comer and upon the public.''

The case of *Eastern Outfitting Co.* v. *Manheim,* 59 Wash. 428 [35 L. R. A. (N. S.) 251, 110 Pac. 23], may also be cited as illustrating the application of the foregoing principle to a state of facts somewhat resembling those of the case at bar. In that case the plaintiff, the Eastern Outfitting Company, a California corporation, had for some years been engaged in business in the city of Seattle, Washington, under its corporate and trade name. The defendant, Manheim, had established and was conducting a similar business in the city of Spokane, Washington, under the name of ''Eastern Outfitting Company.'' The plaintiff undertook to secure an injunction preventing the defendant from the use in Spokane of said trade name. The supreme court of Washington in denying such application held that the plaintiff, not having been engaged in the actual business of selling its goods in Spokane and having no customers there, could not enjoin the defendant from the use in the latter place of the same trade name, since in order to the application of the doctrine of unfair competition there must have been competition at said point through which the plaintiff had suffered by an unfair use on the part of the defendant of its trade name. In the case of *Sartor* v. *Schaden,* 125 Iowa, 696 [101 N. W. 511], the court gave application to the principle in the terse statement that ''there cannot be unfair competition unless there is competition,'' while in the case of *Maxwell* v. *Hogg,* L. R. 2 Ch. 307, it was said: ''The mere declaration of an intention, however public, to publish a magazine or any manufactured articles, bearing a particular name or mark, notwithstanding such declaration is accompanied by expenditure in connection with the intended article, cannot create a right to the exclusive use of a name or mark as a trademark.'' (See, also, 38 Cyc. 670.) [2] Applying the principle as set forth and illustrated in the foregoing cases to the facts of the case at bar, it would

seem clear that the plaintiff had acquired no right to the exclusive use of the trade name "Yellow Taxicab Company of San Diego" in connection with any business actually carried on under said name in the city of San Diego prior to the defendants' appropriation and use of said trade name in the business which they had established and were conducting therein at the time of the institution of this action. The same doctrine must be given application to the defendants' appropriation and use of the trade phrase or slogan, "It takes the tax out of taxi," since no distinction in fact or principle can be found between a trade name and a trade slogan. Whatever rights the Chicago corporation may have gained to the use of the trade slogan, "It took the tax out of taxi," in places where it was actually engaged in disposing of its distinctive product, as against those who might attempt to deceive the public by making and selling taxicabs identical or similar in color and form with its distinctive type, and by using said trade name or trade slogan in that sort of unfair competition, it is clear that it had no rights which it could assert or transfer to this plaintiff as against these defendants, who were not engaged in the manufacture or sale of a like article in San Diego or elsewhere, and, hence, were not in competition with the Chicago concern. The plaintiff herein was in no sense a successor or a licensee of the Chicago corporation in the use of either said name or slogan and could acquire no right to the exclusive utilization of either except through priority of use.

The judgment is affirmed.

Lennon, J., Lawlor, J., Waste, J., Myers, J., and Kerrigan, J., concurred.

Rehearing denied.

All the Justices present concurred.