# DIRECT SERVICE OIL COMPANY v. JAMES E. HONZAY.[1]

December 12, 1941.

No. 32,858.

*Louis H. Joss, L. D. Barnard, Fletcher, Dorsey, Barker, Colman & Barber, Kenneth M. Owen,* and *Henry Halladay,* for appellant. *Lauerman & Pfeiffer,* for respondent.

PETERSON, JUSTICE.

Plaintiff sues to enjoin defendant from using in connection with the operation of his filling station the words "Direct Service," "Direct Service Station," and "Direct Service Oil Company," to which it claims the exclusive right as its tradename in virtue of prior appropriation and use for many years in connection with its business.

Since 1926 plaintiff has been engaged in the business of selling at wholesale and retail gasoline, grease, oil, tires, radios, and automobile accessories. In August 1937 defendant commenced to operate a filling station in Olivia in which he handled at retail a similar line of products.

At and prior to the time defendant opened his station plaintiff owned and operated 16 filling stations in Minneapolis, St. Paul,

[1]Reported in 2 N. W. (2d) 434.

and Milwaukee. It has a large investment. Its business, which has been extensively advertised, is profitable.

The distinctive feature of plaintiff's business is that its stations are located on main streets or highways and adjacent to railroad trackage. By reason of location on railroad trackage, plaintiff is able to unload gasoline direct from railroad cars to its tanks without any hauling by truck. Dealers whose stations are not so situated must have gasoline hauled by truck from railroad tank cars to their stations. By direct transfer of gasoline from railroad cars to tanks at its stations, plaintiff saves the cost of trucking the gasoline and thus is able to undersell its competitors.

Because the words "Direct Service" expressed the method of operation, plaintiff and the partnership which was its predecessor adopted the words as the tradename for the business.

Defendant's station is located on a trunk highway and is adjacent to railroad trackage. His mode of operation is substantially the same as plaintiff's. The chief difference is that defendant operates only one station while plaintiff operates many. Prior to opening his station, defendant had seen some of plaintiff's stations in Minneapolis and the station of an independent dealer at Glencoe, all of which were operated by the direct service method mentioned and advertised that fact. He adopted the words "Direct Service" as also characteristic of his business, which he commenced under the name of "Direct Service Oil Company, James E. Honzay, Prop., Olivia, Minnesota."

In October or November 1938, which was 14 or 15 months after defendant opened his station, he learned that plaintiff's corporate name was "Direct Service Oil Company." Thereupon he discontinued the use of the quoted words in his tradename. Thereafter he did business under the names of "Honzay's Direct Service, James E. Honzay, Prop." and "Honzay's Direct Service Station, James E. Honzay, Proprietor." During all the times mentioned the words "Direct Service" were conspicuously painted on defendant's station. Also, during all such time, he maintained three large signs with the words "Direct Service" on them, one of

which was located on the premises, another on the highway about two miles west, and the third on another highway about one-half mile south of his station.

At the time defendant opened his station and for over two years thereafter, plaintiff's closest station was in Minneapolis, approximately 100 miles away. Subsequently plaintiff opened other stations. On May 27, 1939, which was almost two years afterwards, it granted the use of its tradename to a partnership operating a station at Hector, which is located about 14 miles east of Olivia. Between the last mentioned date and the time of trial in May 1940, it made arrangements for the use of its name with filling station operators at Hutchinson, St. Cloud, Big Lake, Owatonna, Duluth, and New Richmond, Wisconsin, the closest of which was 45 miles from Olivia. It also made arrangements shortly before the trial with a dealer at Lake Lillian, which is about 15 miles distant, whose station had not been opened at the time of trial.

Sales of their products by the parties and others engaged in the same business are essentially local transactions at their filling stations, where customers come with their automobiles for the purpose of making purchases and receiving delivery. There was some testimony that dealers, by means of tank trucks operating from a filling station, also sell some of their products to their patrons situated out in the country wherever they may be. Over 90 per cent of defendant's business came from customers who lived in the area lying ten miles to the south, west, and north and five miles to the east of his station and who were aware of the fact that he was the sole owner thereof. He was born and has spent his entire life in the community and is widely and favorably known there. The trade territory of the partnership at Hector, which was granted the use of plaintiff's tradename, extended five miles west and thence north, east, and south from their station. They traced at least 75 per cent of their trade to customers whom they knew lived in that area. Consequently, the trade territory of defendant did not come within four miles of the partnership's. Although plaintiff claimed that its customers might be and were

misled to believe that defendant's station belonged to plaintiff and to purchase his products in the belief that they were plaintiff's, there was no evidence that plaintiff had a single customer in the territory where defendant conducted his business or that any of plaintiff's customers were misled.

On the negative side, then, it appears that there has been no competition between plaintiff and defendant. When defendant commenced business plaintiff's nearest filling station was about 100 miles away. At the time of trial even plaintiff's licensee at Hector, the station nearest to defendant, did not come into competition with him. Defendant did not represent his business as having any connection with plaintiff. Plaintiff has no mail-order or other business in defendant's territory. No overlapping of trade was shown.

The court below found among other things "that defendant's business at no time came into competition with plaintiff's business; that defendant's business or tradename did not in any manner lead, tend to lead, deceive, or mislead buyers or any of the travelling public who might or did make purchases at the station to think or believe that he or they were trading with plaintiff; * * * and that plaintiff was not shown to have suffered any injury or damage whatsoever by any act or doings of defendant."

We shall assume, but do not decide, that plaintiff by prior appropriation and use in the operation of its business in Minneapolis, St. Paul, and Milwaukee acquired a tradename in the words "Direct Service." The question is whether or not the tradename rights extended to an area in which plaintiff did no business so as to prevent defendant from appropriating and using the words there. If this question is decided against plaintiff, all its other contentions must fall with it.

A tradename, as the term signifies, is a word or phrase by which a business or specific articles of merchandise from a specific source are known to the public. N. W. Knitting Co. v. Garon, 112 Minn. 321, 128 N. W. 288. Protection of a tradename is afforded upon the ground of unfair competition. Relief is granted to protect

the owner of a tradename against diversion of his trade to a later user or simulator by the latter's fraud and deception in misleading the buying public to believe that his goods are those of the owner of the tradename. The protection is against filching or pirating of business, as the practice has been characterized, by a rival.

A tradename can be acquired only by appropriation and use. Rodseth v. N. W. Marble Works, 129 Minn. 472, 152 N. W. 885, Ann. Cas. 1917A, 257.

The right to a tradename, being for the protection of the business of the owner, has no other existence. A tradename, like the trademark considered by us in Cigar Makers' Protective Union v. Conhaim, 40 Minn. 243, 41 N. W. 943, 3 L. R. A. 125, 12 A. S. R. 726, exists as an incident to the business in which it was acquired by appropriation and use. Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A. L. R. 698. The right to a tradename is not one in gross or at large. The owner can use it only to protect his business. He cannot, like the owner of a patent, make a purely negative and merely prohibitive use of it as a monopoly. Rodseth v. N. W. Marble Works, 129 Minn. 472, 152 N. W. 885, Ann. Cas. 1917A, 257, *supra;* United Drug Co. v. Theodore Rectanus Co. 248 U. S. 90, 39 S. Ct. 48, 63 L. ed. 141.

It follows as a necessary consequence that the right to a tradename is coexistent with the markets in which it has been used. Only in such markets can there be the requisite appropriation and use to acquire a tradename and the conditions which give rise to invoking its protection. The first user of the tradename must show competition between his goods and those of the subsequent user thereof in the market where protection is sought. United Drug Co. v. Theodore Rectanus Co. 248 U. S. 90, 39 S. Ct. 48, 63 L. ed. 141, *supra;* Annotation, 36 A. L. R. 928. A tradename cannot travel to markets which the business of the owner thereof has never reached. Absent statute, a tradename like a trademark cannot "project the right of protection in advance of the extension of the trade, or operate as a claim of territorial rights over

areas into which it thereafter may be deemed desirable to extend the trade." United Drug Co. v. Theodore Rectanus Co. 248 U. S. 90, at p. 98, 39 S. Ct. 48, 51, 63 L. ed. 141; see U. S. P. & L. Co. v. Griggs, Cooper & Co. 279 U. S. 156, 49 S. Ct. 267, 73 L. ed. 650.

Where the use of a tradename is in different markets, the first user is not entitled to protection in the market of a subsequent user. The rule has been applied to users in different parts of the nation such as patent medicine manufacturers in Haverhill, Massachusetts, and Louisville, Kentucky, United Drug Co. v. Theodore Rectanus Co. 248 U. S. 90, 39 S. Ct. 48, 63 L. ed. 141, *supra;* to the operator in San Diego and the manufacturer in Chicago of yellow cabs, Yellow Cab Co. of San Diego v. Sachs, 191 Cal. 238, 216 P. 33, 28 A. L. R. 105; and to operators of hotels having the same name at Atlantic City and Chicago, Ambassador Hotel Corp. v. Hotel Sherman Co. 226 Ill. App. 247. Likewise, a merchant operating in one market is held not entitled to prevent the use of his tradename by another merchant in a market where he does not sell his goods or conduct his business, such as the operator of theaters in Boston, New York, and throughout the United States and Canada as against the operator of theaters in Lynn, Roxbury, Lawrence, Fitchburg, and Portland, Loew's Boston Theatres Co. v. Lowe, 248 Mass. 456, 143 N. E. 496, 36 A. L. R. 919; a retail dealer in men's hats with stores in New York, Brooklyn, Providence, and Boston as against one with stores in Worcester, New Haven, and Woonsocket, Kaufman v. Kaufman, 223 Mass. 104, 111 N. E. 691; a retail dealer in household appliances in Detroit and other cities as against such dealer in Grand Rapids, whose store, as here, was 100 miles distant from plaintiff's closest store at the time the name was first appropriated and used by the latter, Good Housekeeping Shop v. Smitter, 254 Mich. 592, 236 N. W. 872; and a retail dealer in clothing in Seattle as against one in Spokane, Eastern Outfitting Co. v. Manheim, 59 Wash. 428, 110 P. 23, 35 L.R.A.(N.S.) 251.

On the other hand, where the goods of the first user of a tradename are sold in the markets of a second user at the time

of the commencement of such use by the latter, the first user's right to the tradename will be protected regardless of the distance between the places at which the parties conduct their business. For example, a retail dealer in children's clothing with a store in New York will be protected as against a later entrant in the field at Chicago, where the former did an extensive mail-order business which competed with the latter for the same business, Ball v. Best (C. C.) 135 F. 434; and so, likewise, a retail grocery store operator who had a store in Seattle and some customers in Tacoma was protected as against a later user with a store only in Tacoma. Groceteria Stores Co. v. Tibbett, 94 Wash. 99, 162 P. 54, L. R. A. 1917C, 955.

The Washington court adhered to the distinction in holding that the owner of the tradename "Paramount," which it used in connection with a downtown theater in Seattle showing first-run pictures, was not entitled to protection of the name against a suburban theater owner showing fourth- and fifth-run films, where it appeared that both competed for different patronage. Code v. Seattle Theatre Corp. 162 Wash. 379, 298 P. 432.

It makes no difference that the first user of a tradename operates his business through multiple units located in different parts of the state. The right of a chain store operator is no different than that of others. Good Housekeeping Shop v. Smitter, 254 Mich. 592, 236 N. W. 872, supra; National Grocery Co. v. National Stores Corp. 95 N. J. Eq. 588, 123 A. 740, affirmed, 97 N. J. Eq. 360, 127 A. 925. The fact that here the words are part of the plaintiff's corporate name does not entitle it to relief simply because of that fact. Yellow Cab Co. of San Diego v. Sachs, 191 Cal. 238, 216 P. 33, 28 A. L. R. 105, and Good Housekeeping Shop v. Smitter, 254 Mich. 592, 236 N. W. 872, supra.

Plaintiff relies heavily on cases like Standard Oil Co. of Maine v. Standard Oil Co. of N. Y. (1 Cir.) 45 F. (2d) 309, and Standard Oil Co. of N. M. v. Standard Oil Co. of Cal. (10 Cir.) 56 F. (2d) 973, which do not involve the question now before us, but rather whether the complainant as the first user of the trade-

name in the field had acquired a right thereto as against the defendant as a subsequent user.

The finding of no competition between plaintiff and defendant in the latter's market where he used the words in which plaintiff claims a tradename definitely puts this case in the class where the first user of a tradename is not entitled to relief. But, even so, plaintiff urges that its business is growing and that in the near future it will enter defendant's field if that has not already been done. Such a contention is "too remote and fanciful," said the New Jersey court in rejecting it in a well considered opinion reviewing the principal decisions. National Grocery Co. v. National Stores Corp. 95 N. J. Eq. 588, 594, 123 A. 740, 743, affirmed, 97 N. J. Eq. 360, 127 A. 925, *supra*. Whatever confusion may arise from conflicting use of the tradename if plaintiff should ever enter defendant's markets will be attributable to its entry there with notice of the situation. Of this defendant, not plaintiff, will have the right to complain. United Drug Co. v. Theodore Rectanus Co. 248 U. S. 90, 39 S. Ct. 48, 63 L. ed. 141, *supra*.

Affirmed.