### LEE N. HOUSTON v. SOL BERDE, d. b. a. BERDE'S FOOD CENTER.[1]

January 9, 1942.

No. 32,931.

[1]Reported in 2 N. W. (2d) 9.

*Samuel Lipschultz* and *Melvin L. Lipschultz,* for appellant.

*R. H. Fryberger,* for respondent.

STONE, JUSTICE.

Since June 18, 1938, defendant has operated in the loop district of St. Paul a retail food store advertised as "Berde's Food Center." Plaintiff, under the name of "Food Centre Stores," opened his first outlet in Minneapolis March 18, 1938, his first in St. Paul, December 2, 1938. He continued expansion until, in August 1940, he had nine outlets in the Twin Cities.

Shortly after June 18, 1938, plaintiff, noting defendant's use of the phrase "Food Center" and claiming to be rightfully entitled to its exclusive use, requested discontinuance.[2] Defendant did not comply. This action followed, resulting in an injunction restricting his use of the involved words.

Decision was based upon findings that, by virtue of prior appropriation, secondary meaning, and intent to expand, plaintiff was entitled to exclusive use of those words in connection with the sale of food products in the Twin Cities, and that "Food Center" in defendant's tradename made it so similar and so likely to deceive and confuse the public as to be unfair competition.

A tradename is a word or phrase by which a business or specific merchandise is made known to the public. Direct Service Oil Co. v. Honzay, 211 Minn. 361, 2 N. W. (2d) 434. When used as a tradename, artificial or made-up words are the sole property of him who makes them up and first uses them. Nims, Unfair Competition and Trade-Marks (3 ed.) § 52. But words descriptive, in their primary sense, of articles or business, become the subject of property rights only when, by use, they have acquired a

---

[2]This request was contained in a letter dated June 21 in which plaintiff claimed some sort of trademark rights from registration of the name with state authorities. Later, the theory of tradename was adopted. Upon it alone the decision below must stand or fall.

secondary meaning, that is, when the public has come to associate the name with a given source or article. Secondary meaning is association, nothing more. When acquired by descriptive words, competitors must use them so as to avoid deception and confusion. Jordan S. S. & M. B. Sanitarium Co. v. Mudbaden Sulphur Springs Co. 135 Minn. 123, 160 N. W. 252; Nesne v. Sundet, 93 Minn. 299, 101 N. W. 490, 106 A. S. R. 439, 3 Ann. Cas. 30. Restriction on other use is to prevent unfair competition. It is granted to protect the first user from diversion of his trade to a later user by confusing or deceiving the buying public. Direct Service Oil Co. v. Honzay, 211 Minn. 361, 2 N. W. (2d) 434.

Where generic words are used in a tradename, it is only the manner of their use by another that is considered and restrained. There must be confusion or deception with implicit representation that the goods of the later are those of the first user. Even so, only use which makes unfair competition can be enjoined. Yellow Cab Co. v. Cooks T. & T. Co. 142 Minn. 120, 171 N. W. 269.

Descriptive words, when used by competitors, inherently tend to some confusion. Use resulting only in unavoidable confusion is not objectionable. Jordan S. S. & M. B. Sanitarium Co. v. Mudbaden Sulphur Springs Co. 135 Minn. 123, 160 N. W. 252. But a use, otherwise legitimate, may be rendered objectionable by a device of deceptive emphasis. For illustration, in Rickard v. Caton College Co. 88 Minn. 242, 92 N. W. 958, plaintiff had long used the name "Minnesota School of Business." Caton College was organized as a competing institution. In advertising, its name appeared in ordinary script letters but, below it, in much larger and heavier form, the words "Minnesota's School of Business." The involved words were geographical and descriptive, and plaintiff had no exclusive rights in them. But injunction properly issued. Objectionable was the "manner in which the description of the school was made, the means taken to imitate the style of plaintiffs' adopted name," which "went further than a reasonably fair description of its locality."

In some cases, "one's name * * * added to the trade-name is not a sufficient distinction to prevent the probable deception." Trappey v. McIlhenny Co. (5 Cir.) 281 F. 23, 27. But, as rule of thumb, that statement, too, is subject to inquiry as to manner of the "addition." It is applicable only where, as in the Trappey case, one's name is subordinated to emphasis of the descriptive words in a manner "calculated to mislead." Manifestly, in a different case, the addition of one's name may, in itself, serve to dispel all confusion. Certainly, when prominently displayed, it will "minimize the possibility of confusion." Kellogg Co. v. National Biscuit Co. 305 U. S. 111, 121, 59 S. Ct. 109, 114, 83 L. ed. 73.[3]

■ No argument is tenable that the words "Food Centre" are not descriptive. They are no different than such generally used designations as "Bowling Center" and "Furniture Center," and differ only in connotation from such names as "Marble Works" (Rodseth v. N. W. Marble Works, 129 Minn. 472, 152 N. W. 885, Ann. Cas. 1917A, 257); "Knitting Mill" (N. W. Knitting Co. v. Garon, 112 Minn. 321, 128 N. W. 288); and "Auto Market" (Iowa Auto Market v. Auto Market & Exchange, 197 Iowa, 420, 197 N. W. 321), all of which are descriptive, and so not susceptible of monopolization as a tradename.

■ Assuming for the moment (there is much evidence and argument to the contrary) that the words "Food Centre" acquired a secondary meaning, associating them in the minds of the public

---

[3]This is the "Shredded Wheat" case, wherein there was no question concerning the National Biscuit Company's being the first user of the phrase to designate its product. The name was considered generic and not susceptible of monopoly. The Kellogg Company, later user of the name, was held to be under no obligation "to insure that every purchaser will know it to be the maker" of Shredded Wheat. Its only obligation was "to use every reasonable means to prevent confusion." The fact was that "the name Kellogg was so prominent on all of the defendant's cartons as to minimize the possibility of confusion." So here, defendant's name is so prominent in its advertising by sign and otherwise as to indicate no possibility of anything but negligible and occasional misapprehension. He has kept as far as possible from any attempt to imitate plaintiff's target-like sign with its bull's-eye center.

with plaintiff's stores, we yet cannot find in evidence support for a conclusion that defendant's use of them was illegal.

Beyond that which must necessarily result from defendant's legitimate use of the words "Food Center," the evidence shows little which will confuse the public and much that will distinguish his store from those of plaintiff. Defendant has one large, painted, horizontal sign across the front of his store with the words "Berde's Food Center," all in the same large letters. In smaller letters atop that sign is the slogan, "St. Paul's Leading 'One Stop' Food Shop." Plaintiff features an original and distinctive target design with a large "bull's eye" at the center of concentric circles, all on a paneled, rectangular background. Between the two outer circles and at top and bottom are the words "Food Centre." This design appears in plaintiff's printed advertising and in the form of neon signs in front of his stores. In painted signs and printed advertising, his slogans are "Shop Our Way Save Everyday" and "Help Yourself to Savings."

At this point of discussion, defendant's conduct is important. He has not given the words "Food Center" prominence beyond what is necessary to describe the business done at his store. There is no showing of conduct implying that his store is connected with plaintiff's stores or any other. Rather, the emphasis is on the possessive "Berde's," and the assertion that his store is "St. Paul's Leading 'One Stop' Food Shop." His printed advertising carries the possessive "Berde's" in larger and bolder type than the words "Food Center."

The difference in spelling of the word "Centre" is without significance. The prospective purchaser is "governed by a general glance. The law does not require more of him." Coca-Cola Co. v. Chero-Cola Co. 51 App. D. C. 27, 273 F. 755, 756. It is important that all plaintiff's stores operate on the self-service plan, with mass display of merchandise, while defendant provides clerk service. And, while defendant's store is in the downtown district, all plaintiff's stores are in outlying areas.

The injunction must be dissolved. We find no evidence of confusion and nothing to show that the manner of defendant's use of the descriptive words even tends to deception, beyond that which necessarily arises from his legitimate use thereof. The conclusion is compelled that, in the exercise of ordinary attention, purchasers will not mistake his store for those of plaintiff. More cannot be required. Singer Mfg. Co. v. June Mfg. Co. 163 U. S. 169, 200, 16 S. Ct. 1002, 1014, 41 L. ed. 118, 130.

The most that can be said against defendant is in comment on what may be mere paucity of originality. In a similar case, this was said:

"Ordinarily imitation is enough to imply that the matter imitated is important at least to the sale of the goods. But when the similarity arises as the one before us did, it indicates nothing, except perhaps the poverty of the designer's invention. Furthermore defendants' persistence in their use of the design after notice proves little or nothing against them." Straus v. Notaseme Hosiery Co. 240 U. S. 179, 36 S. Ct. 288, 289, 60 L. ed. 590.

Defendant is lessee of the store where he operates as "Berde's Food Center." He owns only the meat and dairy departments and sublets to others who own and operate the grocery, fruit, and bakery departments. To the public, ownership of the entire organization is indicated only by the possessive "Berde's." The court below has found that this was "a misrepresentation to the public and was not a correct designation of the business conducted in said store." Plaintiff makes much of that fact, claiming that it aggravates the infringement already existing in the use of the words "Food Center."

We cannot agree. Of course defendant operated the store, as an ostensible unit, for profit. It is not reprehensible that he chose, in some departments, to take his profit as rent. Certainly, the store was enough "Berde's" to be so named. We can see no "misrepresentation" calculated to mislead the public to its injury, at least none of which plaintiff may properly complain.

Customers of retail stores are well able to identify those with whom they deal and to recognize and appraise what they get.

Enough, and more, has been said to make it unnecessary to consider whether the involved words had acquired a secondary meaning, associating them with plaintiff's business.

The order must be reversed with directions to make findings of fact, conclusions of law, and order judgment for defendant.

So ordered.