## HENRY DERRINGER *v.* A. J. PLATE.

RIGHT OF PROPERTY IN A TRADE MARK.—The right of property in a trade mark is recognized by the common law, and does not in any manner depend for its inceptive existence or support upon statutory law, although its exercise may be limited or controlled by statute.

PROPERTY IN TRADE MARK NOT LIMITED BY TERRITORIAL BOUNDS.—The right of property in a trade mark is not limited in its enjoyment by territorial bounds, but may be asserted and maintained wherever the common law affords remedies for wrongs, subject only to such statutory regulations as may properly be made concerning the use and enjoyment of other property.

STATUTE OF 1863 CONCERNING TRADE MARKS.— The statute of 1863 concerning trade marks does not take away the common law remedy for the protection of the same from those who do not register their trade mark according to the provisions of the Act.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The plaintiff averred that he was a resident of Philadelphia, and upwards of thirty years ago invented a pistol known as Derringer's pistol, and adopted as a trade mark for the same the words, "DERRINGER, PHILADEL.," which was and ever since had been his trade mark, and which he had caused to be stamped on the breech of all pistols manufactured and sold by him, and that the defendant since 1858 had been engaged in the manufacture of pistols at San Francisco similar to plaintiff's, on the breech of which he had stamped plaintiff's trade mark, etc. Defendant had judgment on the demurrer and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Nathaniel Holland*, for Appellant.

The complaint is sufficient at common law. The principle is well settled that a manufacturer may by priority of appropriation of names, letters, marks, or symbols, acquire a property therein as a trade mark, for an invasion of which an action for damages will lie, and in the exclusive use of which he may have protection, when necessary, by injunction. (*Coats* v. *Holbrook*, with notes at the end of the case; 2 Stanford Ch., with notes at the end of the case, 286; *Taylor* v. *Carpenter*, Ib. 603; *Partridge* v. *Menck*, Barb. Ch., 2 vol. 101.)

The question raised by the respondent in support of the demurrer to the complaint is that the statute concerning trade marks is in effect a repeal of the common law; and the appellant, in order to maintain his action, must show affirmatively that he has complied with the requirements of the Act passed April 3d, 1853. (Statutes 1853, p. 155.) The answer is that the statute does not take away the remedy at common law; that it is an affirmative statute, and that an action may be maintained both at common law and under the statute. The substance of the rule as laid down in the cases is, where the party has a remedy at common law for a wrong, and a statute be passed giving a further remedy without a negative of the common law remedy, expressed or implied, he may, notwithstanding the statute, have his remedy at common law. (*Wheaton* v. *Hubbard*, 20 Johns. 192; 13 Johns. 322; *Almy* v. *Harris*, 5 Johns. 175; *Clark* v. *Brown*, 18 Wend.)

*Hoge & Wilson*, for Respondent.

In trade mark cases there are three different remedies or classes of cases: 1st—Actions at law for damages. 2d—A bill in equity for an injunction, through which jurisdiction being acquired, other incidental relief is granted. 3d—Criminal prosecutions. (Upton's Trade Marks, 233, 234, 244–246, and cases cited.) The remedy here sought is a bill in equity for an injunction and the incidental relief; and unless the appellant is entitled to the injunction on the case made, there

is no further jurisdiction or power to proceed. (Upton's Trade Marks, 233, 234, 244–246.)'

The statute is the only law in this State on trade marks, and supersedes the common law. (*Commonwealth* v. *Cooley*, 10 Pick. 39; *Mason* v. *White*, 1 Pick. 542; Smith's Com. 904, 905; *Bartlett* v. *King*, 12 Mass. 545; *Nichols* v. *Squire*, 5 Pick. 168; *The State* v. *Conkling*, 19 Cal. 511.)


By the Court, RHODES, J.

This is a suit in equity for an injunction to restrain the defendant from pirating the plaintiff's trade mark, and for the recovery of damages for a violation of the plaintiff's trade mark property.

The defendant's demurrer to the complaint was sustained, and the only question presented on the appeal is whether the statute of 1863, concerning trade marks, repealed or abrogated the remedies afforded by the common law in trade mark cases. The plaintiff does not allege a compliance with the provisions of the statute. He contends that the remedies given by the statute are cumulative to those which a party was entitled to at common law, and the defendant insists that the statute forms a " complete scheme " in respect to trade marks, and thereby repeals the common law rules relating to the same subject matter.

*Right.to a trade mark at common law.*

Any name, symbol, letter, figure or device adopted by the persons manufacturing or selling goods, and used and put upon such goods to distinguish them from those manufactured or sold by others, and employed so often and for such a length of time, as to raise the presumption that the public would know that it was used to indicate ownership of the goods in the person manufacturing or selling them, constitutes his trade mark. His right to the trade mark accrues to him from its adoption and use for the purpose of designating the particular goods he manufactures or sells, and although it has no value

except when so employed, and indeed has no separate abstract existence, but is appurtenant to the goods designated, yet the trade mark is property, and the owner's right of property in it is as complete as that which he possesses in the goods to which he attaches it, and the law protects him in the enjoyment of the one as fully as of the other. In order that the claimant of the trade mark may primarily acquire the right of property in it, it must have been originally adopted and used by him—that is, the assumed name or designation must not be one that was then in actual use by others, (Upton's Trade Marks, 46)—and such adoption and use confer upon him the right of property in the trade mark. It was at one time thought that no man could acquire a right to a particular trade mark, (*Blanchard* v. *Hill,* 2 Atk. 284,) but as the true interests of manufactures and commerce were more fully developed and appreciated, the right of property in trade marks was recognized, and the doctrine has been uniform for many years, that the manufacturer or merchant does possess an exclusive property in the trade mark adopted and used by him. The right of property does not in any manner depend for its inceptive existence or support upon statutory law, though its enjoyment may be better secured and guarded, and infringements upon the rights of the proprietor may be more effectually prevented or redressed by the aid of the statute than at common law. Its exercise may be limited or controlled by statute, as in case of other property, but, like the title to the good will of a trade, which it in some respects resembles, the right of property in a trade mark accrues without the aid of the statute. The right is not limited in its enjoyment by territorial bounds, but subject only to such statutory regulations as may be properly made concerning the use and enjoyment of other property, or the evidences of title to the same; the proprietor may assert and maintain his property right wherever the common law affords remedies for wrongs. The manufacturer at Philadelphia who has adopted and uses a trade mark, has the same right of property in it at New York or San Francisco that he has at his place of man-

ufacture. It was held in *Taylor* v. *Carpenter*, 3 Story, 450, and *The Collins Company* v. *Brown*, 3 Kay & Johns, 423, that an alien was entitled to be protected in the ownership of this character of property, equally with the citizen.

### *Act of* 1863 *concerning trade marks.*

Does not the Act of 1863, instead of constituting a "complete scheme" for the acquisition and protection of property in trade marks, rather proceed on the theory that this species of property did exist, and might thereafter be acquired, under the rules of the common law, and provide that those securing such right according to the provisions of the Act, might have a further or more efficient protection than those who failed to avail themselves of the statute, and relied upon the common law remedies?

The first section, so far as it is applicable to a case of the nature of the present one, provides that when a person who has complied with section two of this Act uses any peculiar name or other trade mark in any manner attached to or connected with any article manufactured by him, to designate it as such, it shall be unlawful for any other person, without the consent of the former, to use said trade mark or name for the purpose of representing any article to have been manufactured "by the person rightfully using such trade mark or name." The second section provides that " any person wishing to secure the exclusive use of any such trade mark or name, under the provisions of this Act, shall file his claim to the same, and a copy or description of such trade mark or name with the Secretary of State." It is provided by section three, that the Secretary of State shall keep a record of trade marks and names filed with him; and by section four it is provided that persons violating the provisions of section one shall be deemed guilty of a misdemeanor, punishable by fine and imprisonment, and shall be liable to an action for damages.

Section five declares the counterfeiting of such trade mark or name a misdemeanor, and provides for its punishment. Section six prohibits the use of such trade mark or name for the

purpose of disposing of any other article than that to which it was originally attached, with intent to deceive or defraud, and provides for its punishment as a misdemeanor; and section seven provides for the punishment of those who aid or abet the commission of the offenses declared in the Act to be misdemeanors.   Up to this point the Act is dealing with trade marks filed with the Secretary of State, and granting protection to the rights of property therein of those who avail themselves of the provisions of the Act, and no reference is made to the right of property in, or the use of trade marks by those who before the taking effect of the Act, whether residing within or without the State, had acquired a right to their use. Sections eight and nine, however, do provide for those cases; and to make it clear that the Legislature did not even attempt to divest persons of existing rights of property, nor perhaps to preclude them from acquiring title as they had formerly done, by adoption and use, it is provided that the Act " shall not be so construed as to permit any person to file, without authority from the owner, any trade mark or name owned or previously used by another person," thus recognizing, not only existing rights of property, but also the rules of the common law under which persons become the owners of trade marks, without having the same registered by the Secretary of State. It is nowhere declared, either directly or indirectly, that property in a trade mark can be acquired only in the mode provided by the Act; but, on the contrary, it appears by collating sections one and ten, that no one is permitted to file his claim with the Secretary of State unless he is the exclusive owner of the trade mark.

Section nine is an affirmance of the common law, and declares that the person who has first adopted and used a trade mark, " whether within or beyond the limits of this State, shall be considered its original owner, with full right of property, and entitled to the same protection by suits at law " as in the case of other personal property.

The defendant's construction of the section, which would

38

make it read, that the person who first adopts and uses a trade mark, shall be considered the original owner, and as such entitled to protection, etc., "provided he files his claim according to the provisions of this Act," cannot be supported. With that construction it amounts to a useless repetition of previous provisions, for the Act had already constituted the person filing his claim to his trade mark, its owner, by giving him its exclusive use, and protecting him against counterfeiting and pirating by means of actions at law and criminal prosecutions, and in a subsequent part of the Act—section eleven—he is granted the aid of an injunction. It would be scarcely reasonable—though it might be highly beneficial to the Library Fund—to hold that the Legislature intended that not only those, who wished to receive the benefit of the more effective protection afforded by the Act, must file their claim with the Secretary of State, and pay the fees, but that the same must be done by all the merchants and manufacturers, not only in this State, but in all of the States, and in every country that maintains commercial relations with California, if they desired to be considered in this State, the owners of their trade marks, and to receive the protection accorded by law to the owners of other personal property.

*Common law remedies for invasion of trade marks.*

At common law, the remedies for invasions of trade mark property were an action at law for the recovery of damages, and an injunction, in which case pecuniary compensation might be incidentally awarded. Several of the States have, by statute, added a criminal prosecution as a further remedy or protection. The remedies at common law, are still left by our statutes in those cases where the trade mark has not been registered according to the Act, for not only is the right of property recognized and affirmed as it existed at common law, and the common law remedies are not taken away, but the protection afforded by suits at law and bills for injunctions is expressly conceded. Those provisions add nothing to the rights previously possessed by the owner of the trade mark,

and are only in affirmance of the common law. But he does not have the aid of a criminal prosecution for his protection.

On the other hand, those owning trade marks, who have filed their claims and affidavits, and paid the fees, have the protection accorded to the other class of cases, and have also that arising from the criminal prosecutions, with penalties, upon conviction, of more than usual severity.

We do not fully agree with counsel for either party in his construction of the Act in respect to its relation to and effect upon the common law remedies. The remedies provided by the Act, at least those applicable to registered trade marks, are not culmulative to those possessed at common law, but in that respect provision is made by the Act for a new case; nor do we think the Act forms a " complete scheme " of itself, in the sense that counsel regards it, as requiring all trade marks to be registered under the Act, to entitle them to protection; though it may be regarded as a " complete scheme," in the respect that it grants certain remedies in cases of registered trade marks, and expressly reserves to the owners in other cases the usual remedies enjoyed at common law.

Judgment reversed, and the cause remanded, with directions to the Court below to overrule the demurrer.