## LERNER STORES CORPORATION v. LERNER.
### No. 11347.

Circuit Court of Appeals, Ninth Circuit.
June 6, 1947.

Jesse H. Steinhart, of San Francisco, Cal., for appellant.

M. E. Cerf, Robinson & Leland, of San Francisco, Cal., for appellee.

Before STEPHENS, HEALY and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant seeks to enjoin appellee from using the name "Lerner" in the title of his store in San Jose, alleging that by such use of said name appellee is indulging in unfair competition.

Appellant, at the time of the commencement of this action, was operating 181 stores located in 41 states and the District of Columbia. Each store is designated as "Lerner Shops" by a sign extending across the front, and printed on price tags, boxes, bags and sales slips. The stores are not advertised in newspapers, magazines, or over the radio. The historical background of appellant, as disclosed by the evidence, may be summarized as establishing that its business is profitable, has expanded from city to city and is continuing so to expand.

The evidence tends to establish that it is appellant's practice to open new stores in populous cities, followed by stores in surrounding communities. Appellant operates two stores in San Francisco and one in Oakland. It had taken a lease on certain property in San Jose with the intention of erecting a store building thereon but was prevented from so doing by war conditions. However, appellant does plan to erect a new building and open a store as soon as building restrictions will permit.

Mr. Magee, a vice-president of appellant Company, testified that communities such as San Jose are within the trading area of San Francisco and that the appellant Company had built up a nucleus of business in San Jose and surrounding communities which justified the opening of a new store in that city. His conclusion was based upon a purported 263 exchange and refund transactions during an eight month period with persons residing in the so-called San Francisco peninsula area which extends from San Mateo to and including San Jose. These exchange transactions constitute from 6 to 7 per cent of the total. Thirteen of the patrons who made exchanges were from San Jose from which appellant deduces that its Market Street store has about 324 transactions per year with residents of San Jose.

Appellee, Wilfred A. Lerner, during May 1944, ran a series of advertisements in the morning and evening newspapers of San Jose advising that he was opening a store to be known as "Lerner's", and after the store had been in operation for approximately one week appellee ran an advertisement in the same papers expressing appreciation for the acceptance of the new store and closed the advertisement with the words, "as always—Lerner's". This was appellee's first venture in the sale of feminine wearing apparel at retail and his first business to be established in San Jose.

Approximately six weeks after appellee opened his store appellant wrote him a letter protesting his use of the name "Lerner's" and appellee immediately set about making additions to the name so as to avoid confusion in the minds of the customers. Appellee used a continuous script type for his advertising and store front modeled on

his own handwriting, which style of lettering differed in every material respect from the arrangement, lettering and text of appellant's store front, and the advertising used by appellee was so arranged as to convey to the public the information that he dealt in merchandise of a generally higher quality and price than "Lerner Shops". Appellee also dropped the apostrophe S ('s), added his given name "Wilfred" and the words "Home Owned".

The underlying questions are: Did the use of the name "Lerner", by appellee, lead the public to understand that his goods were the goods of appellant "Lerner Shops"?

Was "Lerner Shops" already established in San Jose in the sense that it had a substantial nucleus of business there? If so, was its established business of such volume that appellee could reasonably be said to have understood that confusion would result and that he intended to profit thereby, and did appellee's business actually encroach upon that of appellant? Further, were the precautions taken by appellee sufficient to prevent any such confusion or mistake?[1]

█ The trial court found against appellant on each of these controlling questions. Unless the findings of the trial court are clearly erroneous, we are required to affirm the judgment notwithstanding contrary evidence appears but was not adopted by the trial court. We do not understand appellant to dispute this settled principle but, on the contrary, to complain that the court failed to consider evidence free of conflict, a consideration of which would have compelled different findings and a judgment in appellant's favor.

█ The situation as it existed subsequent to the time appellee made the changes in the name of his store is controlling; that is, subsequent to the time appellee added his given name, "Wilfred", and the words "Home Owned", because that is the sole condition against which injunctive relief could operate. Appellant discounts the value, if any, of the said changes.

*First:* Appellant complains of the failure to find, (1) that its stores are known and referred to as "Lerner's"; (2) that appellant had established a valuable reputation and good will; (3) that appellant had established a valuable nucleus of trade with residents of San Jose and adjacent communities; and (4) that it was only the intervention of the war which postponed the necessary construction to enable appellant to open its San Jose store.[2]

█ As to (1) and (2) the findings made by the court are sufficiently comprehensive to encompass the entire case and reflect the evidence on all material matters. The court found that appellee was the first in the field in San Jose and that no ordinarily observant person would confuse the two stores. This finding renders immaterial the specific findings requested by appellant relative to the manner in which its stores were referred to and the reputation it sustained.[3]

The uncontradicted evidence which appellant offered in support of these requested specific findings seems so weak and inconclusive that the trial court was justified in ignoring it. This evidence consisted of a survey in the course of which interviewers stopped people in front of one of appellant's stores in San Francisco and asked them in what manner they spoke of "Lerner Shops". Obviously the results of such a survey are of little value in determining what knowledge residents of San Jose had of "Lerner Shops" and of how they spoke of such shops, if at all. Such evidence certainly does not reflect any familiarity by San Jose residents with the character of goods carried or prices charged in said "Lerner Shops". This evidence could not support a finding that residents of San Jose referred to appellant as "Lerner's".

As to (3), the manner in which appellant arrived at its conclusion as to the amount of business transacted by it with the resi-

1 L. E. Waterman Company v. Modern Pen Company, 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142.

2 Appellee argues that appellant's specification of errors is inadequate and too indefinite to bring up any question for review. However, we think the specifications sufficiently comply with our rules to warrant consideration.

3 Cf. Peterson v. Murphy, 59 Cal.App. 2d 528, 533, 139 P.2d 49.

dents of San Jose has heretofore been referred to.

That evidence fails to establish that a substantial number of people come from San Jose to San Francisco for the specific purposes of shopping at appellant's stores.

In order to strengthen its contention as to the business it transacted in San Jose appellant introduced evidence of business transactions with residents of Palo Alto, San Mateo and Burlingame. The inference intended to be drawn from this evidence apparently was that a San Jose store would naturally take care of the business from said territory. Appellant plans to open stores in Palo Alto, San Mateo and Burlingame. If a store in San Jose would serve this territory, as claimed, why the necessity for establishing stores in each of said communities?

Evidently the trial court concluded such contemplated action by appellant refuted its claims as to said territory's adding to the nucleus of business in San Jose, and we think it correctly did so.

The Court found that appellant relies in substantial part on pedestrian traffic for its business; that it does not advertise; and that its customers include people from areas other than the city in which their stores are located.

In view of the record a finding to the effect that appellant had established a substantial nucleus of business in San Jose would be lacking in evidentiary support.

As to (4), we do not believe the requested finding relates to a material issue in the case.

*Second:* As to the contention that the findings made are contrary to and unsupported by the evidence, appellant attacks, among others, the findings that appellee took reasonable precautions to distinguish his store from those of appellant; that appellee's newspaper advertisements reflected differences existing in the two businesses; that no one in the exercise of ordinary care could confuse the two stores; and that appellee acted in good faith.

There is ample evidence to support said findings.

One example will serve to illustrate: Consider the contention of appellant that the finding that there was no actual confusion on the part of the public between the two businesses, conflicts with undisputed evidence.

Appellant offered testimony of some of its managerial employees, the tenor of which was to the effect that some patrons of the San Francisco stores had asked sales clerks (who informed the managerial employee witnesses that said questions had been asked) whether appellant had opened an establishment in San Jose, and otherwise indicated some confusion between the two stores.

The trial court, quite properly indicated that he could attach but little weight to such testimony.

Some additional evidence of managerial employees who had themselves talked with customers who thought appellant had opened a San Jose store was offered, and appellee testified that some persons had asked him if he was "related to the people who had the store in San Francisco." This testimony would tend to show that far from confusing the two stores the public, at least in San Jose, recognized their separate status. The trial court was well within its discretion in refusing to attach sufficient weight to this whole line of testimony to make it the basis for a finding that there was actual confusion between the stores. The contrary finding made by the Court was justified.

It is interesting to note that appellant moved into territory where another firm using the name "Lerner" was established. The "J. S. Lerner-Vogue" with its home office in Kansas City and doing business in a number of other states was first in the field. Appellant later moved into the same trading area.

*Third:* In support of its contention that it is entitled to the relief sought appellant cites, inter alia, L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 92, 59 L.Ed. 142, and Horlick's Malted Milk Corp. v. Horluck's Inc., 9 Cir., 59 F.2d 13.

In the instant case the appellee took the "reasonable precautions" which the court

decided were necessary in the case of Waterman Co. v. Modern Pen Co., supra. Further, there is an entire absence of a showing of fraud. It was to "prevent a fraud" that the injunction was granted in the Waterman case, supra.

In Horlick's case, supra [59 F.2d 15], we said: "But where a personal name has become associated in the minds of the public with certain goods or a particular business, it is the duty of a person with the same or similar name, subsequently engaging in the same or similar business or dealing in like goods, *to take such affirmative steps as may be necessary to prevent his goods or business from becoming confused with the goods or business of the established trader.*" (Emphasis supplied) 59 F. 2d at page 15. In this case such steps were were taken.

Appellant cites numerous cases such as Brooks Bros. v. Brooks Clothing of California, D.C., S.D.Cal., 60 F.Supp. 442 *affirmed per curiam*, 9 Cir., 158 F.2d 798, certiorari denied 67 S.Ct. 1315, where defendant made false radio advertising claims designed to create confusion between itself and plaintiff; and Stewards Sandwiches, Inc. v. Seward's Cafeteria, D.C.,S.D.N.Y., 60 F.2d 981, where defendant, who had never before conducted a cafeteria, advertised his first venture as, "Coming Soon! Another Seward's Cafeteria."

The element of false advertising or other conduct designed to mislead the public or cause confusion which was controlling in the cited cases, is absent here.

In Sweet Sixteen Co. v. Sweet "16" Shop, Inc., 8 Cir., 15 F.2d 920, plaintiff, with *stores on the Pacific Coast, had advertised* its business extensively in newspapers in Utah and elsewhere. Defendant opened a "wholly similar" business, and there numerous instances appeared wherein dealers and customers were actually misled into mistaking defendant's business for plaintiff's. The advertising by the company in Utah reached a large number of its inhabitants. These differences sufficiently distinguish this case from that of Sweet Sixteen Co. v. Sweet "16" Shop, Inc., supra.

 Some of the cases cited by appellant refer to the name of a product. Here the name is of an establishment. The principle of protection is identical but the area of protection where the name of an establishment is concerned will be more circumscribed and if the establishment is not operating in the same territory no unfair competition exists.[4]

Judgment affirmed.

---

[4] Cf. Yellow Cab Co. of San Diego v. Sachs, 191 Cal. 238, 216 P. 33, 28 A.L.R. 105; Eastern Outfitting Co. v. Manheim, 59 Wash. 428, 110 P. 23, 35 L.R.A.,N.S., 251.