[Civ. No. 16445.   Second Dist., Div. Two.   Feb. 28, 1949.]

WILLIAM E. WEATHERFORD et al., Respondents, v. CHARLES W. EYTCHISON et al., Appellants.

[Civ. No. 16446.   Second Dist., Div. Two.   Feb. 28, 1949.]

FORD VAN LINES, INC. (a Corporation), Appellant, v. WILLIAM E. WEATHERFORD et al., Respondents.

Arthur C. Arnold, William K. Gillaspy and Leo A. Deegan for Appellants.

J. Wesley Cupp for Respondents.

WILSON, J.—Respondents, William E. Weatherford and Mary E. Weatherford, husband and wife, are owners of a transfer and storage business which they operate under the fictitious trade names of Ford Van and Storage, Ford Moving and Storage, Ford Van Lines and Ford Transfer and Storage. They brought an action against appellants Charles W. Eytchison, Arthur L. Eytchison and Claude V. Eytchison, doing

business under various fictitious names, Ford Van Lines, Incorporated, and others, to enjoin them from using the word "Ford" in connection with the transfer and storage business in California. The Eytchisons filed an answer to this action. Ford Van Lines was not served.

Thereafter, Ford Van Lines, Incorporated, filed suit against the Weatherfords, seeking to enjoin them from using the word "Ford," "Ford Van & Storage Company" or "Ford Van Lines" in connection with the transportation of goods in interstate or intrastate commerce. The Weatherfords filed an answer and a cross-complaint in which they asked for virtually the same relief as that sought by their original complaint.

The two actions were consolidated for the purpose of trial. In the suit brought by the Weatherfords, the plaintiffs recovered a judgment and the defendants were enjoined from using the word "Ford" in connection with the transfer and storage business in the State of California. In the action brought by Ford Van Lines, Incorporated, judgment was rendered in favor of defendants and cross-complainants, and Ford Van Lines, Incorporated, was enjoined from using the word "Ford" in connection with intrastate transfer and storage business. These appeals are from both judgments.

Appellant Ford Van Lines, Incorporated, first began using the name "Ford" in the transfer and storage business in 1915 in Nebraska, the name of the company at that time being Ford Delivery Company. In 1941, the name was changed to Ford Van Lines, Incorporated, under which name it is now operating. At the time these actions were filed it was engaged in business in 38 states and the District of Columbia. Its first shipment into California was in 1932 or 1933, when it moved one load. It obtained a permit in California from the Railroad Commission in 1936, which was revoked about four months later. Between 1936 and 1942 it brought a few loads into California. Between 1942 and 1945 it did some business in California and in February, 1945, it signed a contract with Arthur L. Eytchison, doing business as All American Van and Storage Company, to act as its agent in Los Angeles.

Respondent William E. Weatherford started in the transfer business in Los Angeles in 1926 or 1927 under the name Ford Transfer, changing the name to Ford Moving and Storage about two years later. In 1938, he formed a partnership with one L. E. Holt, which lasted about eight months and terminated with his selling his interest to Holt. The latter operated the business for about a year, at which time Weather-

ford bought it back and continued to operate it under the name Ford Van and Storage. Between the years 1930 and 1946 respondents' business was listed in the classified section of the telephone directory under various fictitious names, all of which included the word "Ford." They advertised in the newspapers and their trucks had painted on them the trade name.

After All American Van & Storage became agents for Ford Van Lines, Incorporated, it placed advertisements in the local newspapers under the name "Ford Van Lines," listing a telephone number for that concern which was actually the telephone number of All American. Appellant Ford Van Lines, Incorporated, also placed a quarter-page advertisement in the December 1946 issue of the classified directory, containing four telephone numbers of All American as well as the telephone number of Ford Van Lines, Incorporated, no distinction being made between the numbers. In a quarter-page advertisement in the June 1945 issue of the Los Angeles classified telephone directory All American represented that they were "Exclusive Agents—Ford Van Lines."

About 95 per cent of respondents' business is received over the telephone and after appellants' advertisements appeared respondents suffered a loss of business of between 35 and 40 per cent.

Appellants contend that since Ford Van Lines, Incorporated, is the original owner of the word "Ford" in relation to the transfer and storage business, there are no territorial restrictions upon its use of the word and the protection which it should be afforded in that use. In support of this contention they cite section 14400 et seq., of the Business and Professions Code, *Derringer* v. *Plate*, 29 Cal. 292 [87 Am.Dec. 170], *Stork Restaurant, Inc.* v. *Sahati*, 166 F.2d 348, and *Brooks Bros.* v. *Brooks Clothing of California*, 60 F.Supp. 442. ■ Section 14400 of the Business and Professions Code is but an affirmance of the common law (*Derringer* v. *Plate*, 29 Cal. 292, 298 [87 Am.Dec. 170], construing a similar statute). In the Derringer case defendant demurred to the complaint upon the ground that the statute concerning trademarks was in effect a repeal of the common law and in order to maintain his action the plaintiff must have shown compliance with the requirements of the statute. The court held the statute of 1863 concerning trademarks did not take away the common law remedy for their protection from those who did not register their trademarks according to the provisions

of the act. There is nothing in the opinion to indicate whether the plaintiff, who claimed first use of the mark in Philadelphia, or the defendant was the prior user in California.

In the Stork Restaurant case the plaintiff, operator of the Stork Club in New York, had expended some $7,000,000 in advertising on a nationwide scale by means of newspapers, radio, motion pictures and other mediums. As a result of its efforts the Stork Club was known from coast to coast and commanded patronage from visitors to New York from the United States at large. Although there was no direct competition between the parties the defendant, who operated a small restaurant in San Francisco, was enjoined from using the trade name of the prior user.

In the Brooks case, plaintiff was a New York concern established in 1818, whereas defendant was a California firm established in 1924. Plaintiff, however, had advertised goods for the California trade as early as 1850 and its goods were well known and advertised in California. The injunction was granted. In each of the latter cases the doctrine of ''confusion of source'' was applied.

In the instant case appellant Ford Van Lines, Incorporated, did not become regularly engaged in interstate commerce in California until 1942. Respondents have used the name continuously since 1926 and have advertised since 1931. There is nothing in the record to indicate Ford Van Lines, Incorporated, advertised or was known in California prior to 1945 when it appointed an agent and commenced to advertise. A reference to the map in its advertisement in the December 1946 issue of the telephone directory indicates it was not engaged in business west of Wyoming.

The extent of protection given to trade names is the same as that afforded trademarks. But since goods sold under a trademark are usually sold throughout a larger territory and a trade name is generally used to designate some local business, the protection in the use of a trade name is limited to the territory in which such business is carried on. (*Yellow Cab Co. of San Diego* v. *Sachs*, 191 Cal. 238 [216 P. 33, 28 A.L.R. 105]; *Lerner Stores Corp.* v. *Lerner*, 162 F.2d 160; note, 36 A.L.R. 922.) In the Yellow Cab case, a Chicago corporation doing business through subsidiary companies in many cities throughout the United States under a trade name was held to have obtained no right to the use of such name in connection with the taxicab business in San Diego as against a prior user of the name in that city.

■ Appellants further assert that the findings that respondents' trade name had acquired a secondary meaning are not supported by the evidence, citing *Dunston* v. *Los Angeles Van Co.*, 165 Cal. 89 [131 P. 115]. The court in that case held that the name was not susceptible of exclusive use and therefore of protection as an exclusive trademark or name, the first part of the name referring to the place of business and the remaining words to a description of the business. The injunction was refused because (1) the name was not one in which a property right could be acquired, and (2) there was no evidence of unfair competition, mere similarity of names not establishing the fraud. The court held that there must be such a misuse of name by advertising and soliciting as amounts to fraud. We are not confronted with such a situation in the instant case, the word "Ford" not referring to a geographical location but being "fanciful" and "arbitrary" insofar as the storage and transfer business is concerned. The test of whether or not a secondary meaning has been acquired is set forth in 3 Restatement of the Law of Torts, section 717(b), as follows: "The issue in each case is whether or not in fact a substantial number of present or prospective purchasers understand the designation, when used in connection with the goods, services or a business, not in its primary lexicographical sense, but as referring to a particular person or association."

The evidence is sufficient to establish that Weatherford had used the name "Ford" in connection with various trade names relating to the moving and storage business over a period of years, dating as far back as 1926; that he had advertised in the newspapers and in the telephone directory; that his trucks carried the name; that he had built up a business under that name and was well known to customers desiring services such as were offered by him. Furthermore, the word "Ford" is a part of his name.

■ It is not necessary that respondents prove fraudulent intent. Appellants may be enjoined "if the natural consequence of their conduct is such as to cause deception." (*Hoover Co.* v. *Groger*, 12 Cal.App.2d 417, 419 [55 P.2d 529].)

■ Appellants inserted an advertisement in the classified directory which stated that All American Van & Storage was the exclusive agent for Ford Van Lines; advertisements were placed in the newspapers under the name "Ford Van Lines," giving a telephone number which was that of All American, and appellant Ford Van Lines, Incorporated, placed a quarter-

page advertisement in the classified section of the telephone
directory listing four telephone numbers which were con-
nected with the All American offices. One witness testified he
intended to call Weatherford; he got the number from the
newspaper; the party answered the telephone ''Ford Lines''
and the truck which picked up his furniture was an All
American truck; upon inquiry the driver told him they worked
together; when the shipment failed to arrive promptly he
looked up the number in the telephone directory, this time
calling Ford Van and Storage, and learned for the first time
that Weatherford had not made the shipment. Appellants
admitted they received calls at the All American offices which
were for Weatherford and if someone called and asked for
Mr. Weatherford ''We tell them they have the wrong number;
there is no Mr. Weatherford here''; they do not direct those
calling to Weatherford. Respondents' business, almost 100
per cent of which is transacted over the telephone, decreased
35 to 40 per cent after appellants' advertisements appeared.

█ Appellants allege that respondents have not complied
with the Highway Carriers' Act (Stats. 1935, ch. 223, p.
878; 2 Deering's Gen. Laws, Act 5129a) and not having done
so they cannot enjoin a business which has complied with
such regulations. In 1940 and 1943 a permit to operate as
a radial highway common carrier was issued to Mrs. Jennie
Bailey, doing business as Ford Van & Storage. In 1943 this
permit was revoked because of the transfer of insurance to
M. E. Weatherford. On the same date a permit was issued to
M. E. Weatherford, doing business as Ford Van & Storage.
The question of the validity of the permits is not before this
court and it must be assumed that they were issued after
proper investigation by the Railroad Commission. The evi-
dence shows that William E. Weatherford was the actual
owner of the business except for a period of one year, when
it was owned by Holt, who continued to operate under the
same name.

█ Appellants argue (1) that a trademark is inseparable
from the good will of the business and can have no ''existence
in gross'' unconnected with the business in which it is used,
and (2) that since the business was operated under the name
of Jennie Bailey and M. E. Weatherford it constituted an
abandonment. Conceding that the trade name is inseparable
from the good will, the evidence discloses that the business
was operated continuously under one of the fictitious names

used by respondents containing the word "Ford," and particularly the names Ford Van & Storage and Ford Van Lines, since 1926. Thus there was no abandonment of the name and appellants' authorities are therefore inapplicable.

■ We find no fault with the judgments except that their scope is broader than is warranted by the allegations in the pleadings. The judgments enjoin appellants from using the name "Ford" anywhere in the state of California. In both the complaint and the cross-complaint respondents allege they are engaged in business in the city of Los Angeles and have acquired an extensive patronage therein. There are no allegations in either pleading that they are engaged in business elsewhere in California.

The judgments are modified by deleting the words "State of California" and the word "California" wherever the same appear in said judgments and inserting in lieu thereof the words "City of Los Angeles." The judgments as so modified are affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied March 17, 1949.