[L. A. No. 22972. In Bank. June 25, 1954.]

HARRY M. SCHWARTZ, Appellant, v. SLENDERELLA SYSTEMS OF CALIFORNIA, INC. (a Corporation), Respondent.

Samuel Maidman for Appellant.

Newlin, Holley, Tackabury & Johnston and Hudson B. Cox for Respondent.

EDMONDS, J. — Harry M. Schwartz sued Slenderella Systems of California, Inc., to enjoin the assertedly wrongful use of a trade name. His appeal from an adverse judgment presents for decision questions as to the sufficiency of the evidence and the findings to support the judgment.

Some of the facts were presented by stipulation. Counsel also agreed that the trial court should consider as evidence certain depositions, photographs, advertising matter, the stationery used by each of the parties, and an affidavit concerning a trade-mark search made by counsel for the defendant.

These facts are undisputed:

For several years, Schwartz has engaged in the retail sale of women's apparel under the trade names of "Slenderella" and "Slenderella of Hollywood." At the time this action was tried, he operated two stores in the Los Angeles area, catering primarily to larger-sized women, and specializing in large-size and half-size garments. He began using the name "Slenderella of Hollywood" in 1939 when he opened his first store and filed with the clerk of Los Angeles County a certificate of doing business under that fictitious name. (Civ. Code, §§ 2466, 2468.) Schwartz opened his second "Slenderella" store in 1947.

The name "Slenderella" had been used previously in California by one J. P. Schwarzé, who registered it in 1933 with the Secretary of State for use in connection with the manufacture and sale of wheat flour. At about the same time, one Henry Semeria began using it for his business of selling women's apparel in stores located in San Francisco and Sacramento. Both of these prior uses were discontinued before Schwartz began his business.

In 1944 Schwartz registered with the Secretary of State the names "Slenderella" and "Slenderella of Hollywood" for use in connection with the sale of women's apparel. Approximately 50 or 60 per cent of the merchandise sold by him bears one of these names, either on the goods or their containers. By reason of his business experience, and through the care and high standards maintained by him, he has established a good reputation, and his merchandise has become known to the users and prospective purchasers of it under his trade names. He advertises his business under these names in local newspapers and by mailing cards and circulars to 17,500 customers. The total annual advertising cost is between $1,500 and $4,400.

Slenderella Systems is a California corporation affiliated

with corporations doing business under the same name in New York, Maryland, the District of Columbia, Ohio, Illinois, and Michigan. The affiliated corporations are engaged in the business of operating slenderizing and weight-reducing salons specializing in weight reduction, diet control and posture correction for women. The respondent maintains four salons in the Los Angeles area. It neither owns nor operates any women's dress or apparel shops, nor does it or its associates manufacture or sell any women's clothing or accessories.

Prior to December, 1951, the affiliated corporations had operated under the trade name of "Silooete." In that year, one of the companies acquired by assignment the rights of Erika Schneider in a business using the name "Slenderella" as a trade-mark. Schneider had registered the name with the United States Patent Office in 1941 for use in connection with the manufacture and sale of sugarless candy for health purposes. Those foods were not sold in California before the respondent corporation was formed and began using them in connection with its reducing courses.

Before adopting the name "Slenderella Systems," the affiliates instituted a trade-mark search in each state into which it was contemplated that the business would extend. Several previous registrations of the name, both federal and state, were discovered as well as unregistered uses of it. The Schwartz registration was one of those then found, but the health system's use of the name was in good faith and without intent to capitalize on the reputation Schwartz had built up. Since it began using the name, Slenderella Systems has advertised it in the metropolitan newspapers of Los Angeles, and by 1952, had expended in excess of $15,000 for that purpose. The respondent and its affiliated companies maintain uniformity in their general advertising throughout the several states in which they operate, their advertising being substantially the same as that used by them when they operated under the trade name "Silooete."

By reason of the similarity in names, Schwartz has received some misdirected mail and telephone calls intended for Slenderella Systems. Some of his customers have gone to the respondent's salons in the belief that Schwartz operated women's clothing stores at those locations. Other customers have stated to him or his employees that since he is in the weight-reducing business they would rather first reduce their weight before purchasing large or half-size apparel from him.

Schwartz's complaint is on the theory of unfair competition. He claimed that if the respondent is permitted to carry on its business under the name "Slenderella," his customers and business associates will be misled and defrauded into believing that the two businesses are one. If he is denied an injunction, he alleged, his business will be damaged in its reputation, good will and in loss of profits.

The trial court made findings in accordance with the stated facts. It further found that the respondent's use of the trade name "Slenderella" in an unrelated and noncompetitive business has not caused damage or injury to Schwartz and has not resulted in the deception or misleading of the public. Regarding the instances of confusion which have occurred, it found that "[s]uch confusion arises from the similarity of names and is the result principally of inattention and carelessness on the part of persons so confused." In its opinion, such confusion, "no doubt, has been or will be of short duration."

In attacking the judgment denying an injunction, and the findings upon which it is based, Schwartz contends that the trial court has overly emphasized the defendant's good faith and the fact that the parties are engaged in noncompeting businesses. On the other hand, he argues, it has given too little weight to the incidents of confusion established by the record and to the character of "Slenderella" as a fanciful and distinctive trade name.

Before the amendment to section 3369 of the Civil Code in 1933 (Stats. 1933, p. 2482), in order to obtain injunctive relief against an asserted act of unfair competition in the use of a trade name, it was necessary to establish fraud on the part of the junior appropriator. (See *American Automobile Assn.* v. *American Automobile O. Assn.*, 216 Cal. 125, 135-136 [13 P.2d 707].) The statute now provides that unfair competition may include an unfair *or* fraudulent business practice, and either ground is sufficient to permit injunctive relief. (*McCord Co.* v. *Plotnick*, 108 Cal.App.2d 392, 395 [239 P.2d 32]; *MacSweeney Enterprises, Inc.* v. *Tarantino*, 106 Cal.App.2d 504, 513-514 [235 P.2d 266]; *Wood* v. *Peffer*, 55 Cal.App.2d 116, 124 [130 P.2d 220].)

Although Schwartz asserts that "there is an inherent lack of good faith when one appropriates the identical trade name of a well-established business," the finding of the trial court, that respondent's use of the name "was in good faith and without design or intent to capitalize upon the plaintiff's

prior use of said name," is supported by substantial evidence. The record shows that, before selecting the name, the respondent instituted a nationwide search in order to avoid use of a name that would infringe upon the rights of another person. The name was adopted after advice of counsel was obtained that no infringement would result. Furthermore, the relatively small size of Schwartz's business and the limited geographical area in which it is advertised and known, as compared with that of the respondent and its affiliates, makes extremely unlikely the possibility that the purpose of the latter's use was to capitalize upon Schwartz's business reputation.

■ Since the decision in *Academy of Motion Picture Arts & Sciences* v. *Benson,* 15 Cal.2d 685 [104 P.2d 650], it is established, as the respondent concedes, that injunctive relief against the unfair use of a trade name may be obtained in situations other than where the parties are in direct competition. (*MacSweeney Enterprises, Inc.* v. *Tarantino, supra* at 106 Cal.App.2d 513; *Johnston* v. *20th Century-Fox Film Corp.,* 82 Cal.App.2d 796, 818 [187 P.2d 474]; *Winfield* v. *Charles,* 77 Cal.App.2d 64, 70-71 [175 P.2d 69]; see 40 Cal.L.Rev. 571; *contra: Yellow Cab Co. of San Diego* v. *Sachs,* 191 Cal. 238 [216 P. 33, 28 A.L.R. 105]; *Dunston* v. *Los Angeles Van & S. Co.,* 165 Cal. 89 [131 P. 115], and cases cited; *Weatherford* v. *Eytchison,* 90 Cal.App.2d 379 [202 P.2d 1040]; *Scutt* v. *Bassett,* 86 Cal.App.2d 373, 376 [194 P.2d 781].) The basis of relief in such circumstances is the possibility of injury to the reputation and good will of the business of the prior user from an identification of it in the minds of the public with the source of the second user's goods or services. ■ The senior appropriator may protect, by injunction, his trade name "within the limits fixed by the likelihood of confusion of prospective purchasers." (Rest., Torts, § 730, com. b; *MacSweeney Enterprises, Inc.* v. *Tarantino, supra,* at 106 Cal.App.2d 512-513; *Winfield* v. *Charles, supra,* at 77 Cal.App.2d 70-71.) ■ Although many factors may enter into a determination of whether the use of a specific trade name is likely to result in a confusion of source, the question is primarily one of fact to be determined from all of the circumstances of a particular case. (*MacSweeney Enterprises, Inc.* v. *Tarantino, supra,* p. 513; *Winfield* v. *Charles, supra,* p. 71; *Pohl* v. *Anderson,* 13 Cal.App.2d 241, 242 [56 P.2d 992]; see 63 C.J. Trade-Marks, Trade-Names and Unfair Competition, 414-418, § 112.)

■ Schwartz maintains that the name "Slenderella" has "every characteristic of a novel, unique and fanciful name, and certainly of the type which courts in many cases have stated will be broadly protected." ·He contends that to allow a junior appropriator of it to use the name will destroy its novelty and dilute its value. The evidence, however, does not compel that conclusion. The record shows that, in addition to the prior uses of it in California and the federal registration for the business now owned by the health system, there were several other state and federal registrations of the name, the earliest being made in 1925. Schwartz testified that he had heard the name used in "the trade circles" in women's wear before he decided to apply it to his own business.

The name consists of a defined word (slender) to which has been added a Latin diminutive denoting the feminine (ella). It is suggestive of the uses for which registrations have been obtained, notably health products, scientific aids to slenderizing, and wearing apparel for large-sized women. Other registrations include: slenderets, slenderoids, slendex, slendermaid, slendress, slender form, slim-u-line, slenderlines, thinderella, Cinderella, slenderize, slenderette, slimderella, slendorita, slimadonna, and slender-lee.

To hold that confusion of source as to his products and the respondent's services will be unlikely, Schwartz contends, is to ignore the factual instances of confusion shown by the evidence. He asserts that the trial court has negated the serious aspects of such confusion. Here the parties cater to the same class of the public, the argument continues, "and it is not difficult to perceive that both appellant and respondent are competing for the same purchasing dollar."

■ Although factual instances of confusion may support a determination that confusion of the public is likely from the use of identical or similar trade names, they do not compel that conclusion as a matter of law. (*Palmer* v. *Gulf Publishing Co.*, 79 F.Supp. 731, 738; *Lerner Stores Corp.* v. *Lerner*, 162 F.2d 160, 163; *American Auto. Ins. Co.* v. *American Auto Club*, 184 F.2d 407, 410.) To some degree, at least, the two businesses are inconsistent with one another, as indicated by the allegation of the complaint that "plaintiff and his business have been the subject of ridicule and derision by reason of the apparent inconsistency in having a business catering to the apparel needs of larger-sized women, while at the same time conducting a business specializing in the

weight reduction of larger-sized women." Furthermore, as the trial judge stated in his memorandum opinion, much of the difficulty may be attributed to the newness of the defendant's business, and there has been no evidence of any member of the public purchasing the goods or services of either of the parties upon the basis of the reputation of the other.

The situation of the parties is one from which differing conclusions reasonably may be drawn. Although a contrary determination might be supported by the evidence, the trial court has decided against the likelihood of confusion of source. When the entire record is considered, it fully supports that determination.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Spence, J., concurred.

CARTER, J.—I dissent.

No factual questions are here presented by reason of the stipulation of the parties and the findings of fact by the trial court. The stipulation was made on the assumption that all the facts were agreed to. There remained nothing for the trial court to do except apply the law to the facts, a process involving matters of law, not fact. That is the whole tenor of the reporter's transcript. For example, in discussing the stipulation defendant's counsel said: "[T]here was no great dispute between us as to the facts involved in the case." This is particularly true as to the two questions discussed in the majority opinion, whether the public was confused and whether defendant acted in good faith.* This is further evinced by the trial court in its memorandum opinion. It may be noted that such opinion, although relied upon by the majority, was not made a part of the record in this case. A purported copy of it is attached to defendant's brief and answer to petition for hearing by this court. It appears therein that the court was not weighing evidence. Rather it misconceived the law. It thought competition was necessary (the majority concedes it is not). It said: "From the foregoing it will appear that the parties are not in competitive businesses, not even operating in the same field." Even if competition is a factor, there is competition here, for both were appealing to the same segment of the public, stout women, and to cater to the wishes of that segment. Further, it is said: "It is not the use of the name that is condemned,

---

*The latter is not really a factor in the case as I will later point out.

it is the dishonesty practiced in the use of it." That is not the law as will later appear.

On the question of confusion it was stated at the trial by counsel that they offer "a stipulation as to the *facts*" (emphasis added) concerning that question. Those *facts* are: "[S]ince inception of the defendants' business in California under the trade name Slenderella, the following incidents have occurred:

"1. Employees in plaintiff's establishment have received numerous telephone calls intended for the defendant.

"2. That the said misdirected telephone calls have continued since the listing of the defendant's name in the Central Telephone Directory of Los Angeles.

"3. That many of the plaintiff's customers and prospective customers have inquired as to plaintiff's ownership or connection with defendant's establishments which require the taking of time in the explanation by the plaintiff and his employees to these inquiries.

"4. That certain of plaintiff's customers and prospective customers have gone to the defendant's locations in Hollywood and Beverly Hills believing that the plaintiff had operated women's clothing shops at the said locations.

"5. That customers and prospective customers have stated to plaintiff and his employees that since defendant is in the weight-reducing business, they would rather first reduce their weight before purchasing large or half-size apparel from the plaintiff.

"6. That the plaintiff and his employees have been asked on recurring occasions to quote prices for reducing treatments, necessitating taking of time to make explanations.

"7. That the plaintiff is considering opening a branch store in Beverly Hills upon the termination of his lease of the Hollywood store.

"8. That some mail, not including numbered street addresses, intended for the defendant's establishments, have been received by plaintiff; and, conversely, I don't think Mr. Cox would have any objection to saying there is a possibility, which we don't know of, that some of our mail may have been delivered to the defendant."

There is no escape from the proposition that those *facts* show that the public was confused and misled; that it thought plaintiff's and defendant's businesses were the same; that it thought a reducing product of or treatment by defendant had its source in plaintiff's business and plaintiff was re-

sponsible for it. There are no facts contradicting those stipulated facts. The trial court found (it had no choice in the matter or need not have found at all on the stipulated matters) similarly. It found: "That by reason of the similarity in names plaintiff has received some misdirected mail and telephone calls; certain of plaintiff's customers have gone to defendant's places of business in Hollywood and Beverly Hills in the belief that plaintiff operated women's clothing shops in said locations. That some customers and prospective customers of plaintiff's have stated to plaintiff and his employees that since he is in the weight reducing business they would rather first reduce their weight before purchasing large or half size apparel from plaintiff." Of course, insofar as this finding is not as comprehensive as the stipulation, the latter controls. The statement in the findings following the foregoing finding that "Such confusion arises from the similarity of names and is the result principally of inattention and carelessness on the part of persons so confused" is not only a conclusion of law rather than fact but is an incorrect conclusion of law. It is clear, therefore, from the stipulation of the parties that the public has been confused and misled and there is no basis whatsoever for concluding that it will not be confused in the future. That the public may be educated to the point where they will not be confused is no justification for refusing an injunction to prevent the confusion.

The law on the question of confusion clearly points to confusion in this case. As seen, the public now believes that defendant's activities are attributable to plaintiff. Any wrongful or questionable business practices of defendant will be blamed on plaintiff. These conclusions are not negatived by the suggestions in the majority opinion that the two businesses are inconsistent, that the public did not buy the product of one on the reputation of the other, and that the confusion was merely carelessness on the part of the public. Both businesses are catering to the same consuming public. The public, plaintiff's customers, did believe plaintiff was operating a reducing business and it was because of their knowing plaintiff's business and trade name that they had such belief. That is a reliance upon plaintiff's reputation.

The suggestion that the inconsistency of the two businesses is a factor is not only based upon facts contrary to the record but is also nothing more than another way of saying that there can be no actionable infringement of a trade-mark

unless there is actual market competition. That is not the law. Although the law may have been to the contrary at one time it is now settled that actual market competition between the plaintiff and defendant either geographically or with respect to the character of the commodity or service sold, is not a necessary requisite to injunctive relief from use by another of one's trade name because the protection afforded is to the good will and reputation of plaintiff which can be damaged by a noncompetitor defendant using the same name. (*Academy of Motion Picture Arts & Sciences* v. *Benson*, 15 Cal.2d 685 [104 P.2d 650]; *MacSweeney Enterprises, Inc.* v. *Tarantino*, 106 Cal.App.2d 504 [235 P.2d 266]; *Winfield* v. *Charles*, 77 Cal.App.2d 64 [175 P.2d 69]; *Johnston* v. *20th Century-Fox Film Corp.*, 82 Cal.App.2d 796, 818 [187 P.2d 474]; *Wood* v. *Peffer*, 55 Cal.App.2d 116, 123 [130 P.2d 220]; *California Prune etc. Assn.* v. *H. R. Nicholson Co.*, 69 Cal.App.2d 207 [158 P.2d 764]; *Stork Restaurant, Inc.* v. *Sahati*, 166 F.2d 348; 148 A.L.R. 12; 40 Cal.L.Rev. 571; Derenberg, Trademark Protection, § 36; Nims, Unfair Competition and Trade-Marks (1947 ed.), §§ 275, 374; Callman, Unfair Competition and Trade-Marks (2d ed.), § 51.) The broad statements and intimations to the contrary in *Nolan Bros. Shoe Co.* v. *Nolan*, 131 Cal. 271 [63 P. 480, 82 Am.St. Rep. 346, 53 L.R.A. 384]; *Alhambra Transfer etc. Co.* v. *Muse*, 41 Cal.App.2d 92 [106 P.2d 63]; *Yellow Cab Co. of San Diego* v. *Sachs*, 191 Cal. 238 [216 P. 33, 28 A.L.R. 105]; *Dunston* v. *Los Angeles Van & S. Co.*, 165 Cal. 89 [131 P. 115]; *Scutt* v. *Bassett*, 86 Cal.App.2d 373 [194 P.2d 781]; and *Weatherford* v. *Eytchison*, 90 Cal.App.2d 379 [202 P.2d 1040], cannot be considered as correctly stating the law.

The general rules with respect to actionable confusion have been stated as follows:

"Where the public is deceived 'into believing that good will, or investment, of another, are enjoyed by or is a part of another's business, so that the ordinary public would be led to believe that, in dealing with such person, it was also dealing in some way with the other' we have an evident confusion of businesses. This, it will be seen, is a confusion with respect to source and origin alone, for, while the products of the litigants may actually differ in make, purpose and function, it is conceivable that the confusion will be such that the defendant's goods might be supposed to have come from the plaintiff, or that the business of the plaintiff might be supposed to have a connection with the business

of the defendant, which sometimes is called 'confusion as to sponsorship.' ''

''The effect of this type of confusion is that the defendant's goods are attributed to the plaintiff, the true owner of the infringed trade-mark; the latter is entitled to demand action to insure 'that its reputation shall be of its own making alone,' and that the quality of his product 'lies within his own control.' In such cases, the defendant, user of the infringing trade-mark, may not merely deprive the plaintiff of immediate trade but 'may indirectly do so by tarnishing his reputation, or it may prevent [the plaintiff] from extending his trade to the goods on which the infringer is using the mark.' The plaintiff's reputation may further be endangered in various respects, e. g., the quality of his goods may be brought into disrepute, . . .''

''While confusion of goods can only be evident where the litigants are actually in competition, confusion of business may arise between noncompetitive interests as well.''

''In a suit for an injunction, as distinguished from an action for recovery of damages or profits, actual confusion need not be shown.''

''*Proof of actual confusion can be ignored only when it is clear that the confusion was attributable to extraordinary circumstances or that it only occurred, and could only occur, in a single instance.* In rare cases, the extent to which the confusion can be traced, in whole or in part, to the similarity of the marks or to other considerations may be open to doubt. If, however, the plaintiff is able to produce a substantial number of witnesses to attest to actual confusion, that, of course, will indicate the degree of confusion that there really may be.'' (Emphasis added; Callman, Unfair Competition and Trade-Marks (2d ed.), vol. 3, p. 1361.) Proof of actual confusion requires the conclusion that confusion is probable. (See *Grocers Baking Co.* v. *Sigler*, 132 F.2d 498; *Standard Oil Co.* v. *Michie*, 34 F.2d 802; *S. S. Kresge Co.* v. *Winget-Kickernick*, 96 F. 2d 978.) In the Kresge case it was said at page 987: ''While trademark infringement issues may be presented and determined on the basis of a bare comparison of the marks, yet it is evident that an entirely different situation is presented where the court has not only the marks before it but evidence of actual experience in the trade in the use thereof. Whatever the conclusion of the Judge might be upon merely a comparison of the marks, clearly *he must be governed by what he believes the evidence shows as to*

*actual experience in the trade.* It is the view of and effect upon the purchasing public which is determinative." (Emphasis added.) In the case at bar there is no question that confusion existed in the public mind over the similarity of the name because such confusion was stipulated to. Hence the trial court "must be governed" thereby and find probable confusion and deception of the public. In addition, however, we have a coined word, "Slenderella," and the identical word is used by both plaintiff and defendant. Both appeal to the same segment of the public, stout women. The leading case of *Aunt Jemima Mills Co.* v. *Rigney & Co.,* 247 F. 407 [159 C.C.A. 461, L.R.A. 1918C 1039], cert. denied, 245 U.S. 672 [38 S.Ct. 222, 62 L.Ed. 540], is in point There the trademark was used by plaintiff in the sale of flour. Defendant was using it in the sale of syrup. The court reversed the trial court's refusal of relief, stating at page 409: "To use precisely the same mark, as the defendants have done, is, in our opinion, evidence of intention to make something out of it—either to get the benefit of the complainant's reputation or of its advertisement or to forestall the extension of its trade. There is no other conceivable reason why they should have appropriated this precise mark. The taking being wrongful, we think the defendants have no equity to protect them against an injunction, unless they get it from a consideration now to be examined.

"It is said that even a technical trade-mark may be appropriated by anyone in any market for goods not in competition with those of the prior user. This was the view of the court below in saying that no one wanting syrup could possibly be made to take flour. But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons. In this way the complainant's reputation is put in the hands of the defendants. It will enable them to get the benefit of the complainant's reputation and advertisement. These we think are property rights which should be protected in equity." These principles are in line with the legion of cases holding that in an action for an injunction actual confusion need not be established; probability is enough. (See cases collected Callman, Unfair Competition and Trademarks (2d

ed.), vol. 3, pp. 1372-1373; Nims, Unfair Competition and Trade-Marks (4th ed.), vol. 2, p. 1049 et seq.) Certainly if proof of actual confusion is not necessary then when we have a stipulation of actual confusion plus identical trade names the only conclusion tenable is that plaintiff must be given relief. Other illustrations include granting injunctions to a restaurant against a cocktail sauce business (*MacSweeney Enterprises, Inc.* v. *Tarantino, supra,* 106 Cal.App.2d 504); by a maker of automobile carburetors and camshafts against a maker of jacks and wrenches (*Winfield* v. *Charles,* 77· Cal. App.2d 64 [175 P.2d 69]); by a large and famous restaurant in New York against a small indescribable place in San Francisco (*Stork Restaurant* v. *Sahati, supra,* 166 F.2d 348).

The cases relied upon by the majority opinion are not in point. In *Palmer* v. *Gulf Publishing Co.,* 79 F.Supp. 731, there was no stipulation of actual confusion nor were the names used identical. The same is true of *Lerner Stores Corp.* v. *Lerner,* 162 F.2d 160, and in addition the court was dealing with persons' surnames rather than coined words. Similar comment applies to *American Auto. Ins. Co.* v. *American Auto Club,* 184 F.2d 407, and in addition, the names were common words and the public was not familiar with plaintiff's trade name.

Much space is devoted to an endeavor to establish that defendant did not act in bad faith—did not intend to inflict injury on plaintiff. How that is of any avail to support the judgment does not appear. The undisputed fact remains that defendant, knowing plaintiff was using the trade name "Slenderella" in his business, deliberately launched its business in the same area and used the identical name. Hence defendant was not acting with justifiable ignorance or mistake. Moreover, the factor of good or bad faith is not significant. To make it a factor would be contrary to the law that an intent to deceive or defraud is not necessary to justify an injunction. That is conceded by the majority and is clearly the law. Our statute provides that unfair competition includes "unfair or fraudulent business practice." (Civ. Code, § 3369(3).) (See *McCord Co.* v. *Plotnick,* 108 Cal.App.2d. 392 [239 P.2d 32]; *Wood* v. *Peffer, supra,* 55 Cal.App.2d 116, which deals with a noncompetitive situation; *Weatherford* v. *Eytchison, supra,* 90 Cal.App.2d 379; *Hoover Co.* v. *Groger,* 12 Cal.App.2d 417 [55 P.2d 529].) To argue that the judgment denying plaintiff relief is supportable because defendant did not intend to deceive, when under the law,

deception is not an essential factor to the granting of such relief, is to endeavor to lift oneself by one's own bootstraps.

On the record before this court plaintiff is clearly entitled to injunctive relief against defendant, and the judgment should, therefore, be reversed.

Traynor, J., concurred.

SCHAUER, J., Dissenting.—The evidence and the findings, in my view, entitle the plaintiff to injunctive relief and require reversal of the judgment.

Appellant's petition for a rehearing was denied July 21, 1954. Carter, J., Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.